Jack Harold HALFEN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7397.

United States Court of Appeals Tenth Circuit.

Nov. 1, 1963.

Randall Weeks, Denver, Colo., for appellant.

Jack R. Parr, Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., on the brief), for appellee.

Before LEWIS, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Appellant, Jack Harold Halfen, was tried and convicted by a jury upon a one count indictment charging him with transporting, or causing to be transported, in interstate commerce from Oklahoma City, Oklahoma, to Omaha, Nebraska, a falsely made and forged Western Union money order, knowing the same to have been falsely made and forged, in violation of 18 U.S.C.A. § 2314. The appeal is from that judgment of conviction.

The Government first raises the question of whether this court has jurisdiction to hear and determine the appeal. It asserts that the notice of appeal was not timely filed in the court below and since the taking of an appeal within the prescribed time is mandatory and jurisdictional,[1] this court is without jurisdic-

1. Peterkin v. United States, 10 Cir., 311 F.2d 219; Yates v. United States, 10 Cir., 308 F.2d 737.

tion. In this connection, the record shows that the jury verdict was returned on December 11, 1962, and appellant's court appointed counsel filed a motion for a new trial on December 17, 1962. This motion was overruled on December 18, 1962, and sentence was pronounced on the same day.

The record further shows that on January 30, 1963, the trial court entered an order reciting the following additional facts: On December 28, 1962, at 11:00 A.M., appellant deposited in the mails at Oklahoma City his handwritten Notice of Appeal addressed to the Trial Judge; at that time appellant's court appointed attorney in the trial of the case had been relieved of further service in the matter; the Judge was out of his office and out of Oklahoma City on December 28, 1962, and therefore did not see the Notice of Appeal until January 2, 1963, at which time he handed it to the Clerk of the Court; the Clerk returned the Notice of Appeal to appellant as the requisite filing fee did not accompany it and no court approved application to proceed in forma pauperis was on file; an application to proceed in forma pauperis and affidavit by appellant were received on January 25, 1963, and granted by order dated January 30, 1963; and in the normal course of mail delivery appellant's Notice of Appeal would have reached the Judge on the afternoon of December 28 and been opened and seen had the Judge been in his office that day. The court found and ordered that the Notice of Appeal should be considered as being timely filed.

Under Rule 37(a) (2), F.R.Crim.P., 18 U.S.C.A., a defendant has 10 days after the entry of judgment within which to appeal, but if a motion for new trial

has been made within the 10-day period, " * * * an appeal from a judgment of conviction may be taken within 10 days, after entry of the order denying the motion. * * * " Rule 45, F.R.Crim.P., 18 U.S.C.A., provides: "In computing any period of time the day of the act or event after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, * * *." It is therefore apparent that, a motion for a new trial having been filed and denied on December 18, 1962, appellant had until December 28 to file his Notice of Appeal. The question then is whether the mailing of the Notice of Appeal to, and its receipt in, the Judge's office on December 28, when he was out of the office, was sufficient compliance with Rule 37(a) (2).

■■ It has been held that a notice of appeal was timely filed where it was mailed in time to be deposited or received in the clerk's office 10 days after entry of the order appealed from and at a time when the clerk's office was closed.[2] The fact that appellant's Notice of Appeal was mailed to and received by the Judge rather than the Clerk makes no difference as the Clerk is merely an arm of the court.[3] And the fact that the Notice was unaccompanied by a filing fee does not impair its validity.[4]

■ Furthermore, appellant was in custody at the time, without counsel, and when he deposited the Notice of Appeal in the mail, he had done all that he could possibly do to preserve his right of appeal. Under these circumstances, we think this court may properly assume jurisdiction and consider the case upon its merits.[5]

2. Reynolds v. United States, 5 Cir., 288 F.2d 78, cert. denied, 368 U.S. 883, 82 S.Ct. 127, 7 L.Ed.2d 83.

3. Boykin v. Huff, 73 App.D.C. 378, 121 F. 2d 865.

4. United States v. Brilliant, 2 Cir., 274 F. 2d 618, cert. denied, 363 U.S. 806, 80 S.Ct. 1242, 4 L.Ed.2d 1149; Oddo v. United States, 2 Cir., 171 F.2d 854, cert.

denied, 337 U.S. 943, 69 S.Ct. 1498, 93 L.Ed. 1747.

5. See Wallace v. United States, 8 Cir., 174 F.2d 112, cert. denied, 337 U.S. 947, 69 S.Ct. 1505, 93 L.Ed. 1749; Williams v. United States, 88 App.D.C. 212, 188 F.2d 41; Boykin v. Huff, 73 App.D.C. 378, 121 F.2d 865.

**■■** Appellant's sole contention on the merits is that the evidence was insufficient to support a finding of unlawful or fraudulent intent to transport the money order in interstate commerce. In passing upon the sufficiency of the evidence to sustain a conviction, the evidence and the inferences to be drawn therefrom must be viewed in the light most favorable to the prosecution.[6] And, where the evidence, viewed in this light, falls short of the required standard of proof of the elements of the offense or is as consistent with innocence as it is with guilt or merely raises a suspicion of guilt, the conviction may not stand.[7]

**■** Section 2314, under which appellant was indicted, provides in pertinent part: " * * * Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; * * * [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both. * * *" It is well settled that this statute also applies where a person "causes" such a security to be transported in interstate commerce.[8] It is incumbent upon the Government to prove, among other things, that the transportation in interstate commerce is accomplished with an unlawful and fraudulent intent.[9] And, it has been held that the requisite intent exists where one obtains money or something of value in exchange for a check which he knows to be forged and which is drawn upon, and must be forwarded for collection to, a bank in another state.[10]

The evidence relied upon by the Government to support the conviction in this case need be stated only briefly. In 1960 a series of money orders disappeared from the Western Union office at Superior, Nebraska. In November, 1960, one of these money orders, purporting to be countersigned by C. R. Bullock, who, as far as the record shows, did not exist and in any event was not authorized by Western Union to countersign money orders, was passed in Oklahoma City by appellant and his co-defendant, after appellant had identified himself as "Leo A. Doering" and endorsed it with that name. In exchange, they received a television set and cash for the difference between the amount of the money order and the cost of the television set. The bank with whom the money order was deposited returned it as a forgery. The name of the bank upon which the money order was drawn, The Omaha National Bank, Omaha, Nebraska, appeared on the face of the money order and appellant testified at the trial in this connection as follows: "Q. Is it [the money order] drawn on the Omaha National Bank, Omaha, Nebraska? A. That's correct." In addition, there is evidence in the record to the effect that appellant had either passed, or attempted to pass, other money or-

---

6. Hughes v. United States, 10 Cir., 320 F.2d 459; Ryan v. United States, 10 Cir., 314 F.2d 306; Swallow v. United States, 10 Cir., 307 F.2d 81, cert. denied, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499.

7. Brumbelow v. United States, 10 Cir., 323 F.2d 703, (September, 1963, Term).

8. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 706; Baty v. United States, 9 Cir., 275 F.2d 310.

9. Weeks v. United States, 10 Cir., 313 F.2d 688, cert. denied, 373 U.S. 922, 83 S.Ct. 1523, 10 L.Ed.2d 421.

10. United States v. Sheridan, supra; Hawley v. Hunter, 10 Cir., 161 F.2d 825; Roddy v. United States, 7 Cir., 262 F.2d 308, cert. denied, 359 U.S. 949, 79 S.Ct. 734, 3 L.Ed.2d 682; Rickey v. United States, 5 Cir., 242 F.2d 583. In Pereira v. United States, supra, 347 U.S. at 9, 74 S.Ct. at 363, 98 L.Ed. 435, the Supreme Court said:

"* * * When Pereira delivered the check, drawn on an out-of-state bank, to the El Paso bank for collection, he 'caused' it to be transported in interstate commerce. It is common knowledge that such checks must be sent to the drawee bank for collection, and it follows that Pereira intended the El Paso bank to send this check across state lines. * * *"

ders of a similar nature in Texas and Oklahoma, using the identity and name of Leo A. Doering.

We must conclude that this evidence is sufficient to support the conviction. To paraphrase the language used in Pereira v. United States, supra, footnote 10: When Halfen delivered the money order, drawn on an out-of-state bank, to the television store for the television set, he caused it to be thereafter transported in interstate commerce. It is common knowledge that money orders as well as checks must be sent to the drawee bank for collection and it follows that Halfen intended for the money order to be sent across state lines.

Affirmed.