**Thomas Albert BOYD, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 369–70.**

United States Court of Appeals, Tenth Circuit.

June 2, 1971.

John H. Fields, Kansas City, Kan., for appellant.

Glen S. Kelly, Asst. U. S. Atty., Kansas City, Kan. (Robert J. Roth, U. S. Atty., Wichita, Kan., on the brief) for appellee.

Before BREITENSTEIN and HILL, Circuit Judges, and LANGLEY, District Judge.

LANGLEY, District Judge.

This appeal is from a judgment of conviction and sentence following a jury verdict by which the appellant was found guilty of a violation of 18 U.S.C. Section 2314, which makes it unlawful knowingly to transport in interstate commerce falsely made, forged, altered or counterfeited securities.

The facts for the most part are not in dispute. Newman's Parkwood Sundries Store in Kansas City, Kansas, was broken into sometime after the close of business on October 7, 1968, and the opening of business on the following day and 172 blank Consumers Money Order forms were stolen. Also stolen was a printing machine for impressing on the forms the dollar amount and the issuing agency number assigned to Parkwood Sundries by Consumers Money Order Corporation of America. A few days later the defendant-appellant, Thomas Albert Boyd, was approached by a Melvin Jones, cousin of his stepfather, in

front of a shoeshine parlor in Kansas City, Kansas. Jones asked Boyd to cash a money order for him, showing him a consumers money order with a machine impression of $100.00 but blank as to the date, the name of the sender, the name of the payee, and any endorsement. Boyd declined, stating that he had no identification, and suggested that Jones cash it himself. But Jones also claimed to have no identification. In the course of their conversation Boyd took from his pocket a yellow temporary driver's permit issued by the State of Kansas to a Melvin Pulley which Boyd had borrowed from Pulley some time earlier because Boyd's driver's license had been revoked by the State of Kansas following an accident and Boyd needed the permit to enable him to drive to visit his sick grandmother. On seeing the driver's permit, Jones said, "why don't we use this and nobody will know who you are." Boyd then entered the shoeshine parlor and when he emerged a short time later Jones handed him the money order which was then filled in in writing to show Melvin Pulley as payee and Tom Pulley as sender, followed by a written address, and dated October 10, 1968. On the back of it was written Melvin L. Pulley as endorser, followed by a Kansas City, Kansas, address. Boyd thereupon took the money order to the Douglass State Bank in Kansas City, Kansas, and cashed it, using the borrowed driver's permit to identify himself as Melvin L. Pulley. He took the $100.00 back to the shoeshine place. An FBI agent testified that Boyd told him he gave Melvin Jones $60.00 and kept $40.00. Boyd denied this, claiming that he told the FBI agent that Jones only offered him $40.00, which he refused to accept.

The Consumers Money Order was made payable through the Northwestern Bank & Trust Company, St. Louis, Missouri. The assistant cashier of Douglass State Bank testified that through regular banking channels the Douglass State Bank forwarded the money order to Security National Bank of Kansas City, Kansas, which transmitted it to St. Louis, Missouri, for collection. Consumers Money Order Corporation of America returned the item to Northwestern Bank with a notation that it had been stolen and that bank returned it to Mercantile Trust Company of St. Louis. It was then sent through channels by the Federal Reserve Bank of St. Louis to Douglass State Bank at Kansas City, Kansas, and the $100.00 was charged back against that bank.

The principal defense is that Boyd did not know and had no reason to know that the money order had been stolen or that it was a forged or falsely made security at the time he cashed it; that Melvin Jones had assured him that the money order was good.

Section 2314, under which appellant was indicted, provides in pertinent part: "* * * Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered or counterfeited; * * * shall be fined not more than $10,000 or imprisoned not more than ten years, or both. * * *."

In Halfen v. United States, 324 F.2d 52, 55 (10th Cir.), we said:

"It is well settled that this statute also applies where a person "causes" such a security to be transported in interstate commerce. It is incumbent upon the Government to prove, among other things, that the transportation in interstate commerce is accomplished with an unlawful and fraudulent intent. And, it has been held that the requisite intent exists where one obtains money or something of value in exchange for a check which he knows to be forged and which is drawn upon, and must be forwarded for collection to, a bank in another state."

In United States v. Smith, 426 F.2d 275, 276, (6th Cir.), the court said:

"Accordingly, the important inquiry in the present case is whether the

completion of the blank money orders constituted a false representation or a false execution. We hold that it constituted a false execution. The money orders were not, at the time of the thefts, evidence of an obligation on the part of the issuing company. It was necessary to insert the agent's symbol, an amount, a sender's name, and the name of the payee in order to create an obligation. \* \* \* Here, the insertion of the necessary information on the blank money orders constituted a false making within the meaning of the statute."

In McGee v. United States, 402 F.2d 434, 437, (10th Cir.), we held:

"The evidence presented here established that the two money orders had been stolen at a time when they were completely blank. Subsequently, these previously blank money orders came into the hands of the appellant. At this time they either were, or had been fraudulently completed and made payable to one John L. Price. Using the name of the fictitious payee, appellant cashed these admittedly forged money orders after presenting numerous identification cards as proof of his being the individual named in the instruments. We would ignore reality if we were to conclude that there was not ample evidence from which the jury could infer, as indeed it did, that the appellant had a sufficient connection with the fraudulently completed money orders to be held to possess the necessary guilty knowledge."

In this case, the appellant's own testimony shows that when he first saw the money order in Melvin Jones' possession it was blank except for a $100.00 impression made by a machine. It was the borrowed driver's permit in the name of Melvin Pulley produced by Boyd which inspired Melvin Jones to fill in the name of Tom Pulley as sender and Melvin Pulley as payee and these names appeared on the money order a few minutes later when Jones handed it to Boyd to take to the bank. Boyd's own testimony shows that he falsely represented himself to the bank officer as Melvin Pulley, using the borrowed driver's permit as identification. In our view, there was ample evidence from which the jury could conclude that Boyd knew the money order was falsely made when he took it to the bank to be cashed.

Numerous other errors are assigned by the defendant-appellant which we have considered and find to be of insufficient substance to require discussion.

Affirmed.