**Elias KAGGEN and Rio A. Sferrazza, Plaintiffs–Appellants,**

**v.**

**INTERNAL REVENUE SERVICE and United States of America, Defendants–Appellees.**

**Nos. 1152, 1613, Dockets 94–6183, 94–6185.**

United States Court of Appeals, Second Circuit.

Argued March 20, 1995.

Decided June 6, 1995.

---

David H. Singer, New York City, Thomas A. Lopresti, Smithtown, NY, for plaintiffs-appellants.

Eugene J. Rossi, Gary R. Allen, Washington, DC, (U.S. Dept. of Justice) Zachary W. Carter, Brooklyn, NY, for defendants-appellees.

Before: McLAUGHLIN and JACOBS, Circuit Judges, and KAUFMAN, District Judge.*

---

* Honorable Frank A. Kaufman, of the United States District Court of the District of Maryland, sitting by designation.

**FRANK A. KAUFMAN, District Judge:**

Taxpayers (plaintiffs-appellants) appeal from the judgment below, denying to them, in the summary judgment context of this case, the return, which they seek, of certain monies seized by the Internal Revenue Service (IRS). For the reasons set forth in this opinion, we affirm.

The facts in this case are undisputed. On or about April 12, 1982, the IRS assessed $132,327.06 against each of the two taxpayers for nonpayment of federal employment taxes. Seemingly, taxpayers disputed that assessment and did not voluntarily pay to the IRS any portion of the monies allegedly due.

On or about September 5, 1985, taxpayers agreed in writing to extend the then applicable statute of limitations of six years, see 26 U.S.C. § 6502(a)(1), to December 31, 1991, thus changing the limitations expiration date from April 12, 1988, i.e., six years after April 12, 1982. On November 5, 1990, Congress amended § 6502(a)(1) to provide for a 10 year limitations period in the place of the earlier six year period. Accordingly, in this case, the IRS takes the position that that Congressional amendment extended the limitations date until April 12, 1992.

■ The earlier agreed extension to December 31, 1991, took place pursuant to 26 U.S.C. § 6502(a)(2). Taxpayers assert in this Court, as they did in the court below, that the 10 year amendment, enacted into law by the Congress on November 5, 1990, is not applicable in this case, contending that that amendment applies only with regard to 26 U.S.C. § 6502(a)(1) and not to 26 U.S.C. § 6502(a)(2).

26 U.S.C. § 6502(a) provides in relevant part:

> "Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
>
> (1) within 6 years after the assessment of the tax or,

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 6–year period ..."

(26 U.S.C. § 6502[a] ).

The November, 1990, amendment by Congress specifically refers to "the period specified in *§ 6502*," and not simply to § 6502(a)(1) to the exclusion of § 6502(a)(2):

"The amendments made by this section ... shall apply to ... taxes assessed on or before ... [November 5, 1990] if the period specified in Section 6502 ... for collection of such taxes has not expired as of such date."

Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, 104 Stat. 1388, § 11317(c) (1990).

Accordingly, the above set forth contention by taxpayers concerning the coverage of the November, 1990, Congressional action was correctly rejected by the court below. *See Florsheim Bros. Drygoods Co. v. U.S.*, 280 U.S. 453, 465–66, 50 S.Ct. 215, 219, 74 L.Ed. 542 (1930). However, in this Court, taxpayers additionally argue that the IRS did not fully effect collection within the applicable limitations period, even assuming that that limitations period did not expire prior to April 12, 1992. The IRS, in response, takes the position that that issue should not be reached in this appeal, because the question was not properly raised by taxpayers in the court below. However, certain aspects of what is referred to *infra* in this opinion as the "notice of seizure" issue, were in fact presented and argued in the court below. Accordingly, we deem that issue to be appropriately before us at this time.

■ 26 U.S.C. § 6335(a) refers to "notice of seizure" and provides that such notice be given "after" seizure of the "property." Section 6502, which sets forth the applicable limitation period, relates to the period after assessment. Taxpayers contend that § 6335(a) requires that notice of seizure be given *after seizure* of the property. The IRS contends that that reference in § 6335(a) to property applies only to tangible property, and not to intangible property such as a bank

account. *See G.M. Leasing Corp. v. U.S.*, 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977); *U.S. v. Donahue Indus., Inc.*, 905 F.2d 1325, 1329–30 (9th Cir.1990); *State Bank of Fraser v. U.S.*, 861 F.2d 954, 965–67 (6th Cir.1988). Without reaching that issue upon this appeal, we note that the record in this case does not suggest that taxpayers in fact failed to receive notice of the levy by the IRS which took place upon the bank accounts well before April 12, 1992. There were two levies upon two of taxpayers' accounts in three different banks. Those levies occurred on January 2, 1992, insofar as one of the three banks is concerned, and on January 9, 1992, insofar as the second and third banks were concerned. In the normal course of events all of us know that depositors are sent monthly bank statements by banks. Thus, it is only reasonable for this Court to proceed in this appeal upon the understanding that taxpayers did receive from the two banks notices of the levies in question and that the levies had been honored, prior to April 12, 1992, by all three of the said banks. Accordingly, while notices of the levies upon the three bank accounts and notices of the honoring of those levies were apparently, insofar as the record in this cases discloses, not directly given by the IRS to taxpayers, taxpayers did in fact and effect learn from the banks of the levies and of the honoring of each of the same; thus, taxpayers were informed by the banks that their funds at the said banks had been seized. Under those circumstances, the statutory requirements and the regulations implementing the same, pursuant to which taxpayers contend the IRS was required to give to them explicit notices of the seizures prior to the expiration of the limitations period, namely April 12, 1992, were in fact and in common sense met. While it would seemingly have been better practice for the IRS itself to have given such notices directly to taxpayers, taxpayers in this instance were in no way prejudiced by any such failure of the IRS so to do.

AFFIRMED.

JACOBS, Circuit Judge, dissenting:

I agree with the majority that the 1990 amendment to 26 U.S.C. § 6502(a)(1) acted

to extend the statute of limitations in this case to April 12, 1992. *See Foutz v. United States,* 860 F.Supp. 788, 794 (D.Utah 1994). It is undisputed that the IRS failed to send taxpayers a timely notice of seizure on or before that date. I respectfully dissent, because I believe that failure was fatal to the IRS's claim.

Under 26 U.S.C. § 6502(a), the IRS has ten years after assessment (or any longer period that may be stipulated) to collect by levy. Under § 6502(b), levy is deemed to have been made on the date that notice of seizure is given *as provided by § 6335(a).* Subsection 6335(a) in turn requires that the notice of seizure be given by "the Secretary" *after* seizure of the "property". Although the IRS sent each petitioner a proper notice of levy, the Secretary never sent a notice of seizure. Therefore, the statute of limitations expired on this claim, and the IRS should give the money back.

The IRS argues for a narrow view of "property" under § 6335, one that would include only property that is tangible. Thus the IRS parses the remaining subsections of § 6335, which detail procedures for the *sale* of property, to demonstrate that the word "property" in § 6335(a) cannot include cash, and that property under § 6335 does not mean intangible property. I disagree. "Property" is a broad term, as one suspects the IRS has argued elsewhere, and property in its intangible form is the best kind.

The majority opinion does not address this determinative issue. Instead, it holds that the notice requirement of § 6335 was satisfied when the bank advised petitioners that their funds had been seized. This solution is beset by two problems: (a) § 6335's notice requirement cannot be satisfied in any manner other than through a notice of seizure sent from the Secretary to the taxpayer; and (b) nothing in the record suggests that the banks ever sent the statements on which the majority opinion relies.

First, I do not see how the "actual notice" requirement of § 6335(a)—that "notice in writing [of the seizure] shall be given by the *Secretary* to the owner of the property"—can be satisfied through a third party such as a bank. (Emphasis added). Such an interpre-

tation runs counter to the principles generally governing statutes of limitations. *See Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.,* 953 F.2d 21, 24 (1st Cir.1992) ("The federal courts have made it abundantly clear that actual notice itself, without more, is insufficient to satisfy the requirements of Fed.R.Civ.P. 4(d)(1)."); *National Dev. Co. v. Triad Holding Corp.,* 930 F.2d 253, 256 (2d Cir.) ("We reject the notion that 'actual notice' suffices to cure a void service...."), *cert. denied,* 502 U.S. 968, 112 S.Ct. 440, 116 L.Ed.2d 459 (1991).

Second, there is nothing in the record about the petitioners' banks or bank statements. The majority's holding concerning the curative effect of bank statements is therefore a taking of judicial notice:

In the normal course of events all of us know that depositors are sent monthly bank statements by banks. Thus, it is only reasonable for this Court to proceed in this appeal upon the understanding that taxpayers did receive from the two banks notices of the levies in question and that the levies had been honored, prior to April 12, 1992, by all three of the said banks.

*Ante* at 165. Courts may take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed.R.Evid. 201(b). The statement that "[i]n the normal course of events all of us know that depositors are sent monthly bank statements by banks," fits neither category.

I do not doubt that most banks send monthly statements (though some customers may have other arrangements), and I would be surprised if the petitioners do not get them. But there is nothing in the record on that subject. In the absence of record evidence, the majority opinion takes judicial notice of several things, some of which are more probable than others. Thus the majority opinion takes judicial notice that monthly bank statements were sent and that they were received, which is quite probable. But

did such statements reflect what the statutory notice must show? Section 6335(a) specifically requires that the notice sent to the taxpayer "specify the sum demanded and shall contain, in the case of personal property, an account of the property seized." And I think it is untenable to suppose that bank statements are free of error. Finally, we have no basis for judicial notice that bank customers review their bank statements, or that they do so on a timely basis. The Uniform Commercial Code places certain risks on bank customers who fail to use "reasonable care" to inspect their bank statements. *See* UCC 4–406. But a customer may negligently run certain risks under the UCC without waiving his statute of limitations under the Internal Revenue Code.

A court should not *sua sponte* take judicial notice of controversial facts not contained in the record or argued by the parties:

> A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

Fed.R.Evid. 201(e). The Advisory Committee Notes add:

> Basic considerations of procedural fairness demand an opportunity to be heard on the propriety of taking judicial notice and the tenor of the matter noticed. The rule requires the granting of that opportunity upon request.... [I]n the absence of advance notice, a request made after the fact could not in fairness be considered untimely.

"Before an appellate court takes judicial notice it should advise the parties so they can object or furnish helpful documents." *Browning–Ferris Indus. of South Jersey, Inc. v. Muszynski*, 899 F.2d 151, 161 (2d Cir.1990). The majority opinion thereby invites a petition for rehearing.

Finally, I see no reason to ignore the plain language of the statute. If we construe the statute as written, the biggest problem for the IRS seems to be that it loses the funds it claims here. However, when it comes to the technical defaults of taxpayers, the IRS

properly invites the courts to be philosophical about harsh results. *See, e.g., Aronson v. Commissioner*, 989 F.2d 105, 107 (2d Cir. 1993) (*per curiam*). My reading of the statute creates no systemic or contextual problems. While not binding on the government, the IRS's own manual posits no distinction between tangible and intangible property:

> For statute of limitations purposes IRC Sec. 6502(b) provides that a levy occurs on the date the notice of seizure is given, and not the date the levy is made. Thus, it is extremely important that the notice of seizure be given without delay where the statute of limitations on collection is imminent.

2 Administration, CCH Internal Revenue Service Manual, Manual para. 57(16)0–5 at 314.5. I would leave the IRS to follow its own manual (which warns against the error committed by the IRS in this case) or (if the IRS deems its existing tools for collection to be inadequate) to seek a change in statutory language from Congress.