**Elias KAGGEN and Rio A. Sferrazza,
Plaintiffs–Appellants,**

v.

**INTERNAL REVENUE SERVICE
and United States of America,
Defendants–Appellees.**

No. 1152, Docket 94–6183.

United States Court of Appeals,
Second Circuit.

Argued March 20, 1995.

Decided Nov. 29, 1995.

David H. Singer, New York City, Thomas A. Lopresti, Smithtown, New York, for Plaintiffs–Appellants.

Loretta C. Argrett, Gary B. Allen, Washington, DC (U.S. Department of Justice) Zachary W. Carter, Brooklyn, New York, for Defendants–Appellees.

Before: McLAUGHLIN and JACOBS, Circuit Judges, and KAUFMAN, District Judge.[1]

FRANK A. KAUFMAN, District Judge:

## I

On June 6, 1995, this Court affirmed the judgment of the United States District Court for the Eastern District of New York (Spatt, J.), granting to defendants summary judgment. *Kaggen v. I.R.S.*, 57 F.3d 163, 165 (2d Cir.1995). Plaintiff taxpayers sought thereafter a rehearing which this Court has granted. After such rehearing, this Court hereby reconfirms its earlier decision.

This case concerns the propriety of an Internal Revenue Service ("IRS") levy against taxpayers' bank accounts to satisfy a tax deficiency. The issue is whether notice given to taxpayers that funds had been seized complied with 26 U.S.C. § 6335(a). If not, argue plaintiff taxpayers, the levy was not completed before the statute of limitations lapsed, so that the IRS was time-barred from collecting the deficiency.

We held that sufficient notice had been given. *Kaggen*, 57 F.3d at 165. In so holding, we observed that "depositors are sent monthly bank statements by banks," *id.*, which statements, in this case, would have alerted the taxpayers that their bank accounts had been levied upon by the IRS well before the limitations period for effecting a seizure of those funds had run. Taxpayers promptly petitioned for rehearing, arguing that we had improperly taken judicial notice of facts not in the record—that depositors receive monthly bank statements—without giving taxpayers an opportunity to be heard, as required under the Federal Rules of Evidence. *See* Fed.R.Evid. 201. We granted the petition for rehearing, and requested letter briefs from the parties. Having received and reviewed those letter briefs, we see no reason to disturb our first decision.

## II

This Court may appropriately take judicial notice of the fact that banks send customers monthly bank statements, and so doing, continues to conclude that taxpayers' receipt of those statements, in conjunction with receipt of the notices of levy, provided taxpayers all notice required by § 6335(a).

In their letter brief, taxpayers state that the Court took judicial notice of the following facts:

1. In the normal course of events all of us know that depositors are sent monthly bank statements by banks;

2. The taxpayers did receive from the two banks notices of the levies in question and that the levies had been honored.

3. Taxpayers did in fact and effect learn from their banks of the levies and of the honoring of each of the same; thus the taxpayers were informed by the banks that their funds at the said banks had been seized.

However, not all the above facts were judicially noticed. As taxpayers state in their letter brief at 3, taxpayers received notices of levy from all three banks concerning both accounts. Thus, the only facts this Court judicially noticed were that 1) banks send customers monthly bank statements, and 2) those statements tell customers to whom their money was paid and in what amounts. Thus, there are two issues relating to judicial notice presently before this Court: 1) whether it was proper for the Court to take judicial notice of those facts, and 2) whether, after judicially noticing those facts, it was proper for the Court to conclude that taxpayers received the notice required by § 6335(a).

Concerning that first issue, we note that Federal Rule of Evidence 201 states:

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

1. Honorable Frank A. Kaufman, of the United States District Court for the District of Maryland, sitting by designation.

Two commentators paraphrase the rule as follows:

> In order to take judicial notice under Rule 201, the court must find that the fact is either "generally known" or ascertainable from a source whose accuracy cannot reasonably be questioned; in either case, the court must also find that the fact is not reasonable [sic] subject to dispute."

21 C. Wright and K. Graham, Federal Practice and Procedure: Evidence § 5109 at 519–20 (1977). That banks send customers monthly statements which inform customers to whom their money was paid and in what amounts is not reasonably subject to dispute, as highlighted by taxpayers' failure to argue that their banks, in fact, do not send their customers such statements. Moreover, those facts are generally known, as also highlighted by taxpayers' failure to argue that banks do not generally send such statements to customers. Thus, in their letter brief, taxpayers were "entitled to contest either the propriety of taking notice or the correctness of the fact to be noticed or both." *Id.* at 519. As noted above, taxpayers did not contest the correctness of the facts noticed. Commenting with respect to the rationale behind Federal Rule of Evidence 201 this Court has previously noted: "Judges are not necessarily to be ignorant in Court of what every one else, and they themselves out of Court, are familiar with." *U.S. v. Ricciardi,* 357 F.2d 91, 97 (2d Cir.), *cert. denied,* 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 840, and *cert denied,* 385 U.S. 814, 87 S.Ct. 35, 17 L.Ed.2d 55 (1966) (quoting *Lumley v. Gye,* 2 El. & Bl. 216, 267 (Q.B.1853) (Coleridge, J.)). In *Ricciardi,* defendants had been indicted under a statute which made it unlawful for a labor representative of an employee employed in an industry affecting commerce to demand payment from the employee's employer. Industry affecting commerce was defined in part as "any industry or activity ... in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce." *Id.* at 94. Defendants argued that the employees whom they represented were not employed in an industry affecting commerce, and therefore the federal court lacked jurisdiction to decide the action. Judge Moore disagreed, relying on the fact that the record in *Ricciardi* indicated that the defendants represented employees who were responsible for servicing the heating systems in 5,500 apartment buildings in the City of New York, and that the fuel used in the buildings came from outside the State of New York. The record did not indicate the dollar volume of the fuel consumed in the apartment buildings or the effect a strike or slow-down by the employees would have on the amount of fuel purchased for the buildings. From this record, Judge Moore concluded that the Court was able to "take judicial notice that a labor dispute involving the apartment buildings would have a palpable effect on interstate commerce." *Id.* at 97. Likewise, while the record in the instant case does not indicate that taxpayers received a bank statement or what information the three banks levied upon include in their bank statements, this Court may appropriately take judicial notice of the fact that banks do send monthly statements to customers and that those statements tell customers to whom their money was paid and in what amounts.

This Court has also previously applied the doctrine of judicial notice in a case concerning banking. In *U.S. v. Mauro,* 501 F.2d 45 (2d Cir.), *cert. denied,* 419 U.S. 969, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974), defendant was charged with conspiracy to violate a statute which made it unlawful to knowingly receive property of "any member bank of the Federal Reserve System, and any bank ... organized or operating under the laws of the United States, and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation [FDIC]." *Id.* at 48. The defendant argued that he did not know that the First National City Bank, whose cashier's checks he was charged with stealing, was insured by the FDIC. Therefore, he could not be convicted for violating the aforementioned statute. The government conceded that it had not offered either evidence that defendant knew the First National City Bank was insured by the FDIC or evidence that the bank was a national bank. However, Judge Mulligan noted that it was "unlawful to use the word 'national' in the name of any banking institution not orga-

nized or operating under the laws of the United States" and that "persons joining to establish a national bank must include the word 'national' in its name." *Id.* at 49–50. On the basis of those facts, Judge Mulligan then took judicial notice of the fact that the First National City Bank was a national bank. Furthermore, he concluded that defendant knew it was a national bank because he knew the word 'national' was included in its name.

Courts in general have long taken judicial notice of facts of common knowledge relating to banks and banking procedure. 29 C.J.S. *Evidence* § 29 (1964). *See, e.g., Texas & Pac. Ry. Co. v. Pottorff,* 291 U.S. 245, 254 n. 4, 54 S.Ct. 416, 417 n. 4, 78 L.Ed. 777 (1933), *amended on other grounds,* 291 U.S. 649, 54 S.Ct. 525, 78 L.Ed. 777 (1934) (court took judicial notice of reports of the Comptroller of the Currency of the United States and of various treatises, textbooks and other publications on banking; stated that none of these sources mentioned securing a private deposit in a national bank by a pledge of assets; concluded that such a practice was contrary to good banking practice); *U.S. v. Wilson,* 436 F.2d 122, 124–25 n. 3 (3d Cir.1971) (judicial notice taken of "fact that banks stamp and perforate checks "p-a-i-d" when they are in fact paid"); *Halfen v. U.S.,* 324 F.2d 52, 56 (10th Cir.1963) (common knowledge that money orders and checks must be sent to drawee bank for collection). In the same vein, this Court has taken and continues to take judicial notice of similar facts in this case.

■ Taxpayers object that receipt of the bank statements does not satisfy the requirements of § 6335(a). We start by noting that § 6335(a) contains three requirements.[2] First, notice in writing shall be given by the Secretary to the owner, or shall be left at the owner's usual place of abode or business. Here, the IRS concedes that the Secretary

did not provide such notice of seizure. However, the notices of levy and the bank statements were all received by taxpayers in writing. Therefore, assuming that these documents communicated the information required by § 6335(a), a point to be discussed next, the first requirement of that section has been met.

Second, the notice must provide two items of information: the sum demanded and an account of the property seized. The notices of levy, which taxpayers concede they received, indicates the sum demanded. Bank statements tell the bank customer to whom the money in their account was paid and in what amounts. The bank statements together with notices of levy thus provide the information required by § 6335(a).

■ Third, the two items of information required by § 6335(a) must be provided after the seizure and before the statute of limitations governing the IRS's collection efforts elapses. Although the first item of information, the notice of the sum demanded, was provided to taxpayers in the notices of levy before the seizure, instead of after the seizure as required by § 6335(a), such deviation from the requirements of § 6335(a) is hardly of any legal significance. First, there is no indication in this case that the sum would have changed between the notice of levy and the notice of seizure. Second, taxpayers were not harmed by receiving the notice of the sum demanded before the money was seized, rather than after that date. Regarding the second item of information, the account of the property seized was indicated on taxpayers' bank statements and was therefore received after the seizure. It was also received before April 12, 1992. The IRS levied upon the National Westminster Bank account in the name of Mr. Sferrazza on January 2, 1992[3] and the bank honored that levy on or about February 17, 1992.[4] The

2. § 6335(a) states:

As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is

made.... Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized....

3. Joint Appendix at 16.

4. *Id.* at 9.

IRS levied upon the Columbia Federal Savings Bank and the Bayridge Federal Savings and Loan Association accounts in the name of Mr. Kaggen on January 9, 1992 and those levies were honored on or about that date.[5] Even if the banks did not notify taxpayers until a full thirty days after they honored the levies and allowing five days for mailing, taxpayers received their bank statement reflecting satisfaction of the levies before April 12, 1992. Thus, because taxpayers timely received the information that § 6335(a) requires the IRS to provide to them, the requirements of § 6335(a) have been fulfilled.

Taxpayers present two remaining objections to the Court's taking judicial notice, neither of which are persuasive. First, taxpayers argue that "a court should not *sua sponte* take judicial notice of controversial facts not contained in the record or argued by the parties."[6] However, the facts of which this Court took judicial notice—that banks send their customers monthly statements which tell customers to whom their money has been paid and in what amounts— are not controversial. The lack of controversy is highlighted by taxpayers' failure to argue at any time to this Court that they did not, in fact, receive such statements. Second, taxpayers assert that the Court, by taking judicial notice, "established an agency type relationship between the bank and the IRS."[7] To the contrary, the Court merely established, by taking judicial notice of the aforementioned facts, that taxpayers received the notice to which they claim they were entitled. Therefore, even if the IRS was required to send taxpayers a notice of seizure, taxpayers were not prejudiced by the IRS's failure to do so.

### III

This Court hereby confirms its affirmance as set forth in its June 6, 1995 opinion.

JACOBS, Circuit Judge, dissenting:

I respectfully dissent again.

In *Kaggen v. IRS*, 57 F.3d 163 (2d Cir. 1995) ("*Kaggen II*"), the majority excused the IRS's failure to send a statutorily-required Notice of Seizure by holding that the plaintiffs' bank statements constituted actual notice of the seizure. In the absence of record evidence as to whether the plaintiffs received bank statements and, if so, what information such statements contained, the majority assumed its conclusion:

> In the normal course of events all of us know that depositors are sent monthly bank statements by banks. Thus, it is only reasonable for this Court to proceed in this appeal upon the understanding that ... taxpayers did in fact and effect learn from the banks of the levies and of the honoring of each of the same; thus, taxpayers were informed by the banks that their funds at the said banks had been seized.

*Id.* at 165. In dissent, I argued that this statement constituted an impermissible taking of judicial notice. *Id.* at 166–67. The Panel granted rehearing on this issue, and afforded the parties an opportunity to be heard, as required by Rule 201 of the Federal Rules of Evidence. After reviewing the parties' submissions on rehearing, the majority concludes that judicial notice may be taken of the relevant "facts" under Rule 201, and I conclude that it may not.

The majority takes judicial notice of several things. *Kaggen I* stated that "all of us know that depositors are sent monthly bank statements by banks." *Id.* at 165. However, that modest observation, even if appropriate for judicial notice, does not fully reflect the several assumptions that are necessary if a bank statement is to be deemed the functional equivalent of an IRS Notice of Seizure. Thus, the majority necessarily relies on the judicially-noticed bank statement to satisfy the elements of 26 U.S.C. § 6335(a): namely, that before the April 12, 1992 cut-off date, the statement conveyed notice of "the sum demanded" and provided "an account of the

---

5. *Id.* at 33.

6. Taxpayer's September 1, 1995 letter brief at 3.

7. *Id.* at 4.

property seized."[1]

In sum, the majority takes judicial notice that bank statements are timely, accurate, timely received and read by depositors, and that they reveal, in accordance with the express statutory purpose, that a particular withdrawal represents a seizure by the IRS. Some of these facts are more intuitively reliable than others, but none meets the judicial notice standard under Rule 201: that facts must be "either (1) generally known ... or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b). The majority relies on the general knowledge category.[2]

I do not believe it to be generally known that bank statements are reliably accurate or that they are timely sent and timely examined. It is true that the Uniform Commercial Code furnishes an incentive to read bank statements: after thirty days, a customer is barred (under certain circumstances) from seeking recovery against a bank for an improperly cashed check. U.C.C. § 4–406(d)(2). Thus, people who choose to ignore their bank statements accept incremental risks of bank error. That choice, however, has nothing to do with the IRS's attempts to collect back taxes.

Even if one could take judicial notice that people read their bank statements within 30 days (as prudent depositors should), that assumption does not satisfy the April 12, 1992 cut-off date as to one of the plaintiffs. According to the majority opinion, "[t]he IRS levied upon the National Westminster Bank account in the name of Mr. Sferrazza on January 2, 1992 and the bank honored that levy on or about February 17, 1992.... Even if the banks did not notify taxpayers until a full thirty days after they honored the levies and allowing five days for mailing, taxpayers received their bank statement reflecting satisfaction of the levies before April 12, 1992." Maj. op. at [1021]. Given these

assumptions, the bank statement would have reached the depositor on March 23; however, since the UCC affords the depositor up to thirty days to detect serial forgeries, the prudent depositor had no need or obligation to look at the bank statement by April 12.

This delay is important. Persons who have an interest in the property seized have the right to contest the seizure under 26 U.S.C. § 7426(a). In at least some circumstances, the statute of limitations for filing such a cause of action is tied to the date the Notice of Seizure is received. Thus, persons bringing suit under § 7426 must do so within nine months of the date Notice of Seizure is given. See 26 U.S.C. §§ 6532(c).

Even if we assume that bank statements are accurate, timely sent, and timely read, it is implausible (and certainly not generally known) that all bank statements actually indicate that a particular withdrawal is the result of a seizure by the IRS. Banks may or may not give explanatory information concerning all non-check debits. Depending on what bank regulations provide, banks might understandably conclude that no detailed explanation is needed for funds seized by the IRS, on the assumption that the IRS will follow the statute and provide a Notice of Seizure. After all, the Internal Revenue Code places the burden for notifying taxpayers of a seizure on the tax collector, not the banks.

On the motion for rehearing, we have had the opportunity to look at the IRS Notice of Seizure forms. They disclose, *inter alia*, the Internal Revenue District that took the money, the name of the IRS officer who made the seizure, the name of any accompanying employee, and the statutory authority for the seizure—all very useful information for a taxpayer who may want the money back. (I suppose that people who learn of the IRS seizure via a bank statement could attempt to gather this information by calling an IRS

---

1. Of course, § 6335(a)'s requirement that the notice of seizure "be given by the Secretary" cannot possibly be satisfied by a bank statement. See 57 F.3d at 166.

2. The majority cites the 1933 Supreme Court case, *Texas & Pac. Ry. Co. v. Pottorff*, 291 U.S.

245, 54 S.Ct. 416, but judicial notice in that case was based on official government reports and scholarly treatises, *id.* at 254 n. 4, 54 S.Ct. at 417 n. 4, a "resort to sources whose accuracy cannot reasonably be questioned." *Pottorff* therefore does not bear upon what is "generally known."

Helpline, but I hold out little hope for them.) I do not believe it generally known that a monthly bank statement includes any of this information.[3]

The majority takes the plaintiffs to task for two supposed omissions in their papers on rehearing. Maj. op. at [1020]. True, plaintiffs did not say whether their banks sent monthly statements, and do not argue that "banks do not generally" do so. But the judicial notice issue is not affected by whether banks "generally" send statements to their customers, or whether these plaintiffs use a full-service bank. The sending of statements "generally" is insufficient to support judicial notice that they are sent invariably, and does not recommend the monthly bank statement as a surrogate for official government notice of the seizure of property.

The Second Circuit cases relied upon by the majority are readily distinguishable. In *United States v. Ricciardi*, 357 F.2d 91, 97 (2d Cir.1966), the court took judicial notice of the fact that "a slow-down or strike by the [apartment building] superintendents who run the [fuel-powered] heating systems would affect the amount of fuel used in the buildings in a significant way." If the superintendents did not work, or worked part-time, the heating systems they ran would have run for less time, if they ran at all. Less fuel would therefore be used. Judicial notice in that case was employed to draw a natural conclusion from facts that were already part of the record. Here, in contrast, the court has no facts regarding statements from the plaintiffs' banks or any other bank.

In *United States v. Mauro*, 501 F.2d 45 (2d Cir.1974), the court took judicial notice of the fact that the indictment sufficiently identified the "First National City Bank" as a "national" bank merely by giving its name, because it was illegal for a bank to use the word "national" in its name unless the bank was actually a "national bank" under federal law. *Id.* at 49. Here, the majority cites no law requiring banks to send out error-free

monthly statements that specify which withdrawals are attributable to IRS seizures.

Because I adhere to the view that judicial notice was improperly taken, I would hold that the IRS's failure to serve the plaintiffs with a timely notice of seizure, as required by 26 U.S.C. §§ 6502(b) and 6335(a), makes the collection of the tax assessment invalid.

---

3. The IRS argues that these forms are useful only for saleable assets, as opposed to cash. The form itself refutes the IRS's position. Form 2433, revised as of March 1988, has a series of boxes to reflect the "Disposition of Property & Date". The last check-box signifies "Disposition unnecessary (cash applied directly to account)".