Quincy Ashton MILLER,
et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 3:93CV7015.

United States District Court,
N.D. Ohio,
Western Division.

Nov. 7, 1996.

Richard R. Huber, Milan, OH, Timothy W. Shuminsky, Shuminsky, Shuminsky & Molstad, Martha M. McMinn, Sioux City, IA, for plaintiffs.

Henry J. Riordan, Beverly Ortega Babers, Charles M. Green, S. Robert Lyons, Department Of Justice, Tax Division, Washington, DC, Ralph J. Lewis, Robert G. Trusiak, Office Of The U.S. Attorney, Toledo, OH, for U.S.

## ORDER

CARR, District Judge.

This is a wrongful levy action brought pursuant to 26 U.S.C. § 7426 in which plaintiffs, through their next friend and father, allege that the government improperly seized property stored in a Netherlands safety deposit box.[1] Pending is defendant's motion for summary judgment. (Doc. 49). For the following reasons, the government's motion shall be granted.

Plaintiffs are the children of David J. Miller (Miller), who pleaded guilty to and was imprisoned for conspiring to import marijuana, filing false income tax returns, and failing to report monetary instruments. *See Miller v. Taylor*, 1992 WL 159451 (9th Cir.1992) (affirming denial of parole and incarceration of 128 months).

While Mr. Miller was serving his sentence, the government undertook to collect taxes Miller owed from his criminal activities. While doing so, the Internal Revenue Service (IRS) looked overseas to a safety deposit box that Mr. Miller had rented at the Raiffeisenbank bank in Baarn, Netherlands. Acting pursuant to a 1948 treaty with the Netherlands,[2] the government submitted a final rev-

---

1. The parties agree that the property found in the safety deposit box included $10,000 in United States currency, a stamp collection, and a gold coin. (Doc. 50, Exh. 13 at 12–13).

2. This treaty between the United States and the Netherlands entitled the "US–Netherlands Income Tax Convention of 1948" states at Article XXII:

   (1) The Contracting States [United States and the Netherlands] undertake to lend assistance and support to each other in the collection of the taxes which are the subject of the present Convention, together with interest, costs, and additions to the taxes and fines not being of a penal character.

   (2) In the case of applications for enforcement of taxes, revenue claims of each of the Contracting States which have been finally determined may be accepted for enforcement by the other Contracting States and collected in that State in accordance with the laws applicable to the enforcement and collection of its own taxes. The State to which application is made shall not be required to enforce executory mea-

enue claim to the Dutch government who, in accordance with Dutch law, confiscated the contents in the safety deposit box. As stated by the government "[t]he contents were auctioned and the net proceeds of the sale, $15,615, was forwarded to the United States and applied to David Miller's liability."[3] (Doc. 49 at 12). Plaintiffs do not take issue with the procedures followed by the government in assessing the tax deficiency or requesting assistance from the Dutch government in the collection of Mr. Miller's debt in accordance with the treaty.

Plaintiffs do allege that they, as a result of a gift from their father, are the rightful owners of the property found in the security deposit box. Plaintiffs also claim that, because they are separate taxpayers not responsible for the debts of their father, the government improperly levied on plaintiffs' property to satisfy their father's tax debt. Plaintiffs state that neither they nor their father received notice of the government's levy until after the seizure and sale. To recover "the value of the property wrongfully levied" plaintiffs bring the instant action under 26 U.S.C. § 7426(a)(1), which states:

> If a levy has been made on property or property has been sold pursuant to a levy, any person ... who claims an interest in ... such property and that such property was wrongfully levied upon may bring a

civil action against the United States in a district court of the United States.

Having had its motions to dismiss for lack of subject matter jurisdiction (Doc. 21) and failure to state a claim (Doc. 44) denied by this Court, the government now, having engaged in a substantial amount of discovery and investigation, moves for summary judgment on the grounds that: (1) plaintiffs' action is barred by the nine-month statute of limitations codified at 26 U.S.C. § 6532[4] and (2) the process of determining ownership of the levied property violates the act-of-state doctrine. Because I find the statute of limitations, if it applies at all, to have commenced and expired, the government's motion shall be granted.

■ As a threshold matter, I must decide if the seizure of the property is even subject to the constraints imposed by the Internal Revenue Code. The government argues "when the Dutch seize property pursuant to the treaty, there is no requirement that the IRS issue a notice of levy." (Doc. 49 at 16). I agree.

According to the language of the treaty, once the government procures the assistance of a foreign government in the collection of taxes, such collection occurs "in accordance with the laws applicable to the enforcement and collection of its own taxes." *United States–Netherlands Treaty,* Art. XXII(2).

---

sures for which there is not provision in the laws of the State making the application.

(3) Any application shall be accompanied by documents establishing that under the laws of the State making the application the taxes have been finally determined.

(4) The assistance provided for in the Article shall not be accorded with respect to the citizens, corporations, or other entities of the States to which application is made, except as is necessary to insure that the exemption or reduced rate of tax granted under the convention to such citizens, corporations or to the entities shall not be enjoyed by persons not entitled to such benefits.

(Doc. 50 at Exh. 15).

3. According to Dutch officials:

On January 16, 1991, the Dutch IRS confiscated at the expense of the tax debtor the contents of the safe deposit box at the RABO Bank in Baarn, that had been rented by the tax offender and his wife. A copy of this garnishment order was also sent to the tax offender. The

contents of the safe deposit box consisted of dollar bills and a stamp collection. In conformity with the legal regulations, the dollar bills were traded in and the stamps were auctioned. The American authorities were informed about this on May 20, 1992.

(Doc. 49, Exh. 13 at 2). Based on this statement, it appears that Dutch, not United States, officials opened the deposit box, seized the property, auctioned the stamps, and exchanged the dollars. After accomplishing those tasks, the Dutch authorities forwarded a fixed amount of money to the United States less the expenses associated with the Dutch activities.

4. Although the government already presented—and this Court denied—the statute of limitations argument, *Miller v. United States,* 838 F.Supp. 338, 340 (N.D.Ohio 1993), that prior order specifically noted that "defendant may, if it desires, renew its effort [to dismiss based on the statute of limitations] by way of a motion for summary judgment." After further discovery, the record is sufficiently complete to make a determination regarding the statute of limitations argument.

Thus, on agreeing to assist the United States, the Dutch will act pursuant to Dutch—not United States—law.

In this case, the government properly requested "assistance and support" from the Netherlands in the collection of Mr. Miller's tax debt. Prior to requesting such assistance, the government undertook to make a final determination of Miller's tax debt. After making this final determination, the government submitted, with proper documentation, a request to the Dutch authorities for assistance. Although not required to lend assistance, *see United States v. van der Horst,* 270 F.Supp. 365, 369 (D.Del.1967), the Dutch government agreed to assist in the collection of the debt.

After agreeing to assist, Dutch law governs the actions of the Dutch. Pursuant to the law of the Netherlands, the Dutch authorities seized the property from the deposit box, exchanged the U.S. currency, auctioned the stamp collection, and transferred the proceeds to the United States government after subtracting the costs associated with the seizure and sale. The legality of this cooperative endeavor pursuant to valid international treaty is not contested.

Other than submitting the initial request for assistance and providing the required documentation, the United States had no involvement in the seizure and sale of the property. The tasks of seizing and selling the property were undertaken by the Dutch government pursuant to Dutch law. As such, I conclude that the IRC notice requirements do not apply. Instead, the notice requirements of Dutch law would apply.

In apparent fulfillment of those requirements, the Dutch authorities sent a letter with a copy of the garnishment writ to Miller. He received that notice and ultimately came to understand that property had been seized from a safety deposit box bearing his name at the Raiffeisenbank Bank in Baarn, Netherlands. The documents accompanying the government's motion indicate that the Dutch followed their own laws regarding post-seizure notice and the plaintiffs do not argue or present evidence to the contrary.

If plaintiffs seek to contest the legality of the seizure and sale by the Dutch government, they should do so via the Dutch judicial system. Presumably, if the Dutch government violated its law and plaintiffs receive a favorable judgment against the Dutch government, then the Dutch government could seek the recovery of the proceeds from the United States. In any event, adjudication of the legality of the Dutch seizure under Dutch law would require this court to inquire into "the validity of [a] public act[ ] [that] a recognized foreign sovereign power committed within its own territory," thereby violating the act-of-state doctrine. *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964). I conclude, therefore, that the IRC in general and its notice provisions in particular do not apply. Plaintiffs dispute is, in essence, with the acts of the Dutch officials and the operation of Dutch law. The IRC has no authority over those officials or their actions. The act-of-state doctrine protects the Dutch officials, in any event, from being answerable to the plaintiffs in this court.

Nevertheless, even if the notice requirements of the IRC apply, I conclude that the notice received by Miller was sufficient to trigger the commencement of the limitations period. Thus, I agree with the government that plaintiffs' claim is time barred for failure to file within the statutorily allotted time period.

The pertinent statute of limitations is found in 26 U.S.C. § 6532(c)(1): "no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the *date of the levy* or agreement giving rise to such action." As explained in an earlier order, "the date of the levy" with respect to tangible property for statute of limitations purposes is "the date on which the *notice of seizure* provided in section 6335(a) is given." *Miller v. United States,* 838 F.Supp. 338, 339 (N.D.Ohio 1993) (emphasis added, quoting 26 U.S.C. § 6502(b)).

Section 6335(a) states:

As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property (or, in the case of personal property,

the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot be readily located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address. Such notice shall specify the sum demanded and shall contain, in the case of personal property, a description with reasonable certainty of the property seized.

Thus, on receiving notice of the seizure from the Secretary, the § 7426 claimant has nine months to file the claim or else such claim will be time barred.

In support of its argument that plaintiffs' claim is barred by the statute of limitations, the government has presented evidence that the Dutch government delivered a copy of the "garnishment order" to David Miller on January 16, 1991. Miller who is not versed in the language of the Dutch, wrote the Netherland's Consulate General in Los Angeles requesting an explanation of the order. Eventually, by February 19, 1991, Miller came to understand that "property was taken from the Raiffeisenbank at Baarn and sold to satisfy in part or whole some tax obligation." (Doc. 50, Exh. 17 at 8). At that time, Miller wrote "I have no property, nor have ever had any property, in the Raiffeisenbank at Baarn," but "[m]y children have property there (or did have) under control of my Wife Mary Miller." *Id.* Unlike their father, plaintiffs, who appear to have been very young at the time, never received notice that the property was seized and sold, with the proceeds ultimately sent to the United States government.[5]

From the applicable rules of law and facts presented, a two-part analysis emerges. This analysis will determine whether, as the government argues, the statutory limitation period commenced and expired, thereby requiring this Court to grant defendant's motion for summary judgment. First, must *plaintiffs* receive notice of the seizure, or is David Miller's receipt of notice sufficient to trigger the commencement of the statute of limitations period? Second, if it is sufficient for just David Miller—and not plaintiffs—to receive notice, did notice of the seizure from the Dutch government satisfy the statutory requirements so as to trigger the running of the limitations period? If plaintiffs must receive notice, or if the notice Miller received is statutorily insufficient, then the government is not entitled to judgment as a matter of law, and the motion, if the IRC applies, must be denied. But, on the other hand, if plaintiffs, as allegedly putative owners, are not required to receive notice, and the notice received by Miller was statutorily sufficient, then plaintiffs' claim will be barred by the statute of limitations, and the government is entitled to judgment as a matter of law.[6] Because I conclude that there is no requirement in this case that plaintiffs themselves receive notice and the notice received by David Miller comported with § 6335(a), the government's motion for summary judgment shall be granted.

■ First, there is no requirement in the statute that plaintiffs must receive notice of the seizure. Plaintiffs argue that "the government was statutorily required to give notice of seizure to any known *putative owners....*" (Doc. 54 at 8). I disagree. There

---

5. The government admits it never sent notice to the plaintiffs or to their father. (Doc. 55 at 5) ("the Internal Revenue Service did not issue notice a notice of seizure after the property was seized"). In defense of its failure to send a notice of seizure, the government contends that "the terms of the treaty are clear" and it is the Dutch government, not the IRS, that is required to send notice of seizure, which is what was done in this case.

6. Plaintiffs, in their response brief, state "[b]ecause the statute of limitations was tolled in this case by virtue of the government's failure to serve the statutorily required notice on Plaintiffs, the statute of limitations has not run and the action is not barred." (Doc. 54 at 9). The proper framework in which to analyze this issue, however, is not to see whether the statute has tolled, but rather to see if the statute of limitations commenced in the first place. The precise issue at stake is whether adequate notice was received by plaintiffs or their father so as to justify the commencement—and subsequent expiration—of the limitations period. Plaintiffs "tolling" argument seems to imply that the statute commenced and then, for some later reason, the statute stopped or tolled, thus preventing its expiration.

is no statutory requirement that plaintiffs, as "known putative owners," must receive notice of seizure pursuant to § 6335(a). When the seizure involves personal property, the statute requires that notice be sent to the "possessor" of the property. Furthermore, service of notice "need not be made upon potential third party owners" to satisfy the notice provisions of the federal tax law. *William L. Comer Family Equity Trust v. United States*, 732 F.Supp. 755, 760 (E.D.Mich. 1990); *see also Douglas v. United States*, 562 F.Supp. 593 (S.D.Ga.1983) ("the IRS is under no duty, constitutional or otherwise, to notify every person claiming an interest in property levied upon").

In this case, David Miller was the "possessor" of the personal property found in the deposit box. It is undisputed that David Miller rented the safety deposit box, and the safety deposit box was registered in his name. Even if plaintiffs claimed a property interest in the contents seized from the box, they are merely "third party owners" who are not required to be served. Plaintiffs do not assert that they leased the box or registered the box in their names. And the fact that plaintiffs' names allegedly appeared on the envelopes and stamp collection cannot mean that plaintiffs "possessed" the property. As the named renter of the box, David Miller was also in possession of its contents; he was, therefore, the only individual who is statutorily required to be served with notice of the seizure.

Aside from the technical differences between David Miller as "possessor" and plaintiffs as "third party owners," there is a practical aspect to this case as well. If David Miller, as plaintiffs allege, conveyed ownership of the property to plaintiffs and subsequently stored the property for plaintiffs in a

safety deposit box leased in his name, he essentially became the guardian or trustee of such property.[7] Because David Miller, with respect to the stored property, knew more than plaintiffs about the contents, value, and existence of the property, giving notice to David Miller, as opposed to plaintiffs, actually increased the probability that the property might be protected from a wrongful governmental seizure. After all, it would have done little good to serve notice on the plaintiffs who were not even teenagers at the time of the seizure. The plaintiffs could have done little, if anything, to secure their property. Had they known and understood the circumstances of the seizure, plaintiffs would likely have contacted their father in any event.

To argue that plaintiffs must receive notice in this case is especially disingenuous because, in reality, it is David Miller, as next friend and father, that brings this suit on behalf of plaintiffs. In reality, notice was given to a person who could—and ultimately did—bring suit for return of the seized property. The truth of the matter is that had plaintiffs—and only plaintiffs—been given notice, the statutory limitation period would have been more—not less—likely to expire without an opportunity to challenge the seizure.

■ Second, I conclude that the notice given—sent by the Dutch government and received by David Miller—was sufficient to trigger the statute of limitations period. The Second Circuit's discussion of § 6335(a) in *Kaggen v. I.R.S.*, 71 F.3d 1018 (2d Cir.1995) is, in my view, persuasive as to the issue of whether David Miller received notice in conformity with the statutory requirements of § 6335(a). As stated by the court in *Kaggen:*

> notice in writing shall be given by the Secretary to the owner, or shall be left at

---

7. If David Miller's delay in bringing suit caused injury to his children, then his children may have a cause of action not against the United States or the Netherlands, but against David Miller himself as trustee of plaintiffs' property. Miller's conduct, namely placing his minor children's property in a safety deposit box registered in his name in a foreign nation, arguably constitutes conduct that "manifests an intention to create a trust." *Restatement, Second, Trusts* §§ 23–24. If in fact Miller created a trust for his children, he arguably breached at least three duties when he

failed to bring suit within nine months of receiving notice that the property had been seized: breach of a duty to exercise reasonable care and skill, duty to preserve the trust property, and duty to defend actions which may result in a loss to the trust estate. *Id.* §§ 174, 176, 178. Consequently, by breaching his fiduciary duties as trustee of his children's property, Miller may be amenable to suit by his children to recover "any loss or depreciation in value of the trust estate resulting from the breach of trust." *Id.* § 205.

the owner's usual place of abode or business. Here, the IRS concedes that the Secretary did not provide such notice of seizure. However, the notices of levy and the bank statements were all received by taxpayers in writing. Therefore, assuming that these documents communicated the information required by § 6335(a), a point to be discussed next, the first requirement of that section has been met.

The decision in *Kaggen*, therefore, stands for the proposition that so long as "written" notice is "received by the taxpayer" and this notice communicates "the information required," the fact that it was not sent by the Secretary will not be fatal to a finding of sufficient notice.

In the instant case, written notice was sent to a post office box at Miller's place of abode: the Federal Prison Camp in Boron, California. Miller received the notice, as indicated by his letters to the Dutch Consulate in Los Angeles requesting translation assistance. The notice contained the "information required," inasmuch as a there was "an account of the property seized." 26 U.S.C. § 6335(a). By February 19, 1991, David Miller understood that personal property had been seized from the safety deposit box in Baarn, Netherlands. There is no evidence on the record to indicate that Miller misunderstood or was confused as to what safety deposit box the order referred.

As in *Kaggen*, the fact that Miller's notice came from someone other than the Secretary is not fatal to a finding of adequate notice so as to trigger the commencement of the limitations period. In *Kaggen*, the court determined that a monthly account statement from a bank provided statutorily sufficient notice to the taxpayer. If a bank statement can convey the information necessary to put a potential claimant on notice, then a garnishment order from Dutch tax officials and a notification statement from the Dutch General Consulate can likewise provide notice to a potential claimant. Even though the order and notification statement were originally written in a foreign language, Miller sought assistance with the translation and was quickly apprised of the circumstances. In this situation, the notice sufficed to inform a reasonably prudent individual about the circumstances of the seizure.

In sum, on receiving adequate notice per § 6335(a), the nine month statute of limitations period commenced, thus giving plaintiffs until November 19, 1991 to file suit. Plaintiffs ultimately filed suit on January 8, 1993. Because limitations period expired before plaintiffs filed suit, the instant action is time barred, and the government is entitled to judgment as a matter of law. Therefore, for this reason as well, the government's motion for summary judgment shall be granted.

For the foregoing reasons, it is

**ORDERED THAT** defendant's motion for summary judgment shall be, and hereby same is, granted.

**So ordered.**