Celsa HILAO, et al., Plaintiffs–Appellees,

v.

ESTATE OF Ferdinand E.
MARCOS, Defendant,

and

Swiss Bank Corporation and Credit
Suisse, Appellants.

No. 95–56823.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 18, 1996.

Decided Sept. 11, 1996.

---

Michael H. Rauch, Fried, Frank, Harris, Shriver & Jacobson, New York City; Paul J. Bschorr, Dewey Ballantine, New York City, for appellants.

**850**

Robert A. Swift, Kohn Swift & Graf, Philadelphia, PA; Jon M. Van Dyke, Honolulu, HI, for plaintiffs-appellees.

Before: FLETCHER, PREGERSON, and RYMER, Circuit Judges.

FLETCHER, Circuit Judge:

This appeal arises out of proceedings to enforce a judgment of nearly $2 billion against the Estate of Ferdinand E. Marcos in favor of nearly 10,000 class plaintiffs (referred to hereinafter collectively as "Hilao") who suffered (or are family members of those who suffered) torture, "disappearance", and summary execution during Marcos' tenure as president of the Philippines.[1] Swiss Bank Corporation and Credit Suisse (the Banks) appeal jointly from an order of the district court directing them to deposit into the court registry all assets in deposit accounts at the Banks that are claimed by the Estate of Ferdinand Marcos. We have jurisdiction under 28 U.S.C. § 1292(a)(1) and vacate the order.

*FACTUAL BACKGROUND
& PROCEDURAL
HISTORY*

Hilao registered its Hawai'i judgment against the Estate in the Central District of California in May 1995 pursuant to 28 U.S.C. § 1963. That same month, writs of execution and notices of levy, together with notices of deposition in aid of execution, were served on the Los Angeles wholesale branch of Credit Suisse and on the Los Angeles representative office of Swiss Bank Corporation.[2] The writs and notices purported to levy upon deposit accounts "opened, closed or controlled, directly or indirectly, by Ferdinand E. Marcos in his own name or under [any of 26 enumerated] aliases or pseudonyms". The Banks have submitted apparently undisputed declarations stating that the Los Angeles offices have no deposit accounts or information concerning deposit accounts in those names and that the Los Angeles offices have no access to information concerning the Banks' deposit accounts located in Switzerland. Since 1986, the Marcos accounts in banks in Switzerland have been frozen by order of the Swiss Federal Council or the Swiss Federal Office of Police in connection with a request by the Republic of the Philippines for international legal assistance; the Republic has alleged that the funds on deposit were stolen from the government's coffers and has attempted to reclaim them. Each Bank completed the required garnishee's memorandum in response to the notice of levy and provided the same information.

On 17 May 1995, the Banks both moved to vacate and quash the levies and the deposition notices. Before replying to these motions, Hilao served the Banks with additional notices of depositions. Hilao and the Banks then agreed that the Banks would adjourn the hearing date on the motions to vacate and would produce certain witnesses and documents; the Banks reserved all rights to object to Hilao's execution and discovery efforts. The banks produced documents from their Los Angeles offices, made certain objections to discovery notices and subpoenas, and produced four deponents in Los Angeles and Toronto.

On 20 October 1995, Hilao moved for entry of judgment against the Banks in the full amount of the judgment against the Estate and accrued interest for the Banks' alleged failure to comply with the levies. Later, Hilao moved for sanctions against the Banks.

---

**1.** The Estate's appeal from that judgment, No. 95–15779, is currently under submission. Prior appeals in that case include *Hilao v. Marcos*, 878 F.2d 1438 (9th Cir.1989) and *Trajano v. Marcos*, 878 F.2d 1439 (9th Cir.1989); *Trajano v. Marcos (In re: Estate of Ferdinand E. Marcos Human Rights Litigation)*, 978 F.2d 493 (9th Cir.1992), *cert. denied*, 508 U.S. 972, 113 S.Ct. 2960, 125 L.Ed.2d 661 (1993); and *Hilao v. Estate of Ferdinand Marcos (In re: Estate of Ferdinand Marcos,*

*Human Rights Litigation)*, 25 F.3d 1467 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 879 (1995).

**2.** Both banks are incorporated and headquartered in Switzerland and their Los Angeles establishments are licensed by California's State Banking Department.

On 8 December 1995, the district court heard argument on all the pending motions. On 11 December, the court entered an order that, while not mentioning any of the pending motions, directed the Banks to deposit into the court registry "as an interpleader proceeding all assets in the possession of the BANKS that are the subject matter of this proceeding".

The Banks filed a notice of appeal on 14 December 1995. The same day, the Banks moved the district court for a stay of the order pending appeal; the motion was denied on 19 December 1995. This court then granted a stay of the district court's order pending this expedited appeal.

### STANDARD OF REVIEW

■■■ Questions of law, whether federal or state, are reviewed *de novo*. *Twenty–Three Nineteen Creekside, Inc. v. Commissioner*, 59 F.3d 130, 131 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996); *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). While a district court's decision to enter an injunction is reviewed for an abuse of discretion, *America West Airlines, Inc. v. National Mediation Board*, 986 F.2d 1252, 1258 (9th Cir.1992), issues of law underlying a district court's injunction are reviewed *de novo, Miller v. California Pacific Medical Center*, 19 F.3d 449, 455 (9th Cir.1994). A district court's interpretation of federal rules is reviewed *de novo. Claar v. Burlington Northern R.R. Co.*, 29 F.3d 499, 500 (9th Cir.1994) (Federal Rules of Evidence).

### DISCUSSION

#### I. Effectiveness of Levy

Federal Rule of Civil Procedure 69(a) governs execution proceedings in federal courts. It provides that

> [t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

We therefore begin our analysis with California law.

■■■ California enacted in 1982 a revised comprehensive scheme governing the enforcement of judgments, the Enforcement of Judgments Law ("EJL"), which is codified as Title 9 of California's Code of Civil Procedure. The law includes an entire division on the enforcement of money judgments. *See* Cal.Civ.Proc. §§ 695.010 *et seq.* The EJL makes all property of a judgment debtor subject to enforcement of the judgment and allows enforcement by levy against that property, including a debtor's deposit accounts. Cal.Civ.Proc. §§ 695.010, 699.710, 699.080(a)(5). The manner in which a judgment creditor can levy upon a deposit account is specifically set forth: "[T]o levy upon a deposit account, the levying officer shall personally serve a copy of the writ of execution and a notice of levy on the financial institution with which the deposit account is maintained." Cal.Civ.Proc. § 700.140(a). The general provisions of the EJL further provide that "if a writ, notice, order, or other paper is required to be personally served under this title" and "[i]f the service is on ... a financial institution", then "service shall be made at the office or branch that has actual possession of the property levied upon or at which a deposit account levied upon is carried". Cal.Civ.Proc. § 684.110(a),(c). Because there is no dispute that the deposit accounts of the Estate are not carried at the Banks' Los Angeles offices, under California law the personal service of the writs of execution and notices of levy at those locations was ineffective to levy on the Estate's accounts.[3]

---

3. Hilao's argument that these provisions do not apply to the Banks because the Banks are not "financial institutions" under the EJL is without merit. The law defines "financial institution" as "a state or national bank, state or federal savings and loan association or credit union, *or like orga-*

*nization ..."* Cal.Civ.Proc. § 680.200. If the Banks' wholesale branches and representative office are not organizations "like" a state or federal bank, it is difficult to imagine what organization could be comprehended within the phrase "like organization".

█ Hilao is incorrect in its assertion that provisions of the International Banking Act of 1978, 12 U.S.C. §§ 3101 *et seq.,* constitute an applicable federal statute that under Rule 69(a) preempts California execution law. Under 12 C.F.R. § 28.11, promulgated under the Act, "[a] foreign bank operating at any Federal branch or agency is subject to service of process at the location of each such Federal branch or agency".[4] The offices at which the notices of levy were served, however, are not Federal branches or agencies. The International Banking Act provides that "a foreign bank ... may ... establish one or more Federal branches or agencies in any State in which ... it is not operating a branch or agency pursuant to State law", 12 U.S.C. § 3102(a)(1), and California's Financial Code provides that "[n]o foreign (other nation) bank which maintains a federal agency or federal branch in this state shall concurrently be licensed to maintain an agency or branch office in this state", Cal.Fin.Code § 1707. Thus, federal and state branches and agencies of foreign banks are mutually exclusive under both federal and state law. Credit Suisse's Los Angeles branch is licensed by California's State Banking Department as a wholesale branch, while Swiss Bank Corporation's Los Angeles office is licensed by the state as a representative office. Since the Banks both have state-licensed branches in California,[5] their California offices cannot be federal agencies or branches. Therefore, service of the notice of levy at the Los Angeles offices was not authorized by 12 C.F.R. § 28.11 in derogation of California execution law under Rule 69(a).

A more difficult question is whether or not Rule 4.1 of the Federal Rules of Civil Procedure preempts California execution law under Rule 69(a) as to service of a notice of levy.[6] Rule 4.1 provides that "[p]rocess other than a summons ... or subpoena ... shall be served by a United States marshal, a deputy United States marshal, or a person specially appointed for that purpose" and that "[t]he process may be served anywhere within the territorial limits of the state in which the district court is located".[7] Hilao argues that it complied with these requirements and therefore service was proper and the levy effective.

Case law in at least one circuit appears to hold that a general rule of procedure such as Rule 4.1 does not apply in supplementary execution proceedings under Rule 69(a), even though the Federal Rules have the force of statute.[8] "The reference in Rule 69(a) to applicable federal statutes appears to refer to federal statutes *expressly governing execution,* see Note of Advisory Committee on Rule 69(a), a category that would presumably comprehend any rule regulating execution, such as Rule 62(a), but not the rules of procedure or of evidence in gross." *Resolution Trust Corp. v. Ruggiero,* 994 F.2d 1221, 1226 (7th Cir.1993) (suggesting that because enforcement proceedings are meant to be "swift, cheap, [and] informal" a district court "could proceed in any way that satisfied the requirements of due process").

The few other cases that have addressed the interaction of state and federal service

---

4. A "Federal agency" is an office, operated by a foreign bank in the U.S. and licensed by the Comptroller of the Currency, "which can engage in the business of banking but cannot exercise fiduciary powers or accept deposits". 12 C.F.R. § 28.2(b). A "Federal branch" is such an office which can exercise fiduciary powers and accept deposits. *Id.* at § 28.2(c). *See also* 12 U.S.C. §§ 3101(5),(6).

5. Although it is not clear that Swiss Bank Corporation's representative office in Los Angeles qualifies as either an agency or a branch, that bank is licensed by California to maintain a wholesale branch in San Francisco.

6. There also appears to be a question as to whether 28 U.S.C. § 566(c) preempts California

execution law on this issue. That statute provides that "[e]xcept as otherwise provided by law or Rule of Procedure, the United States Marshals Service shall execute all lawful writs, process, and orders issued under the authority of the United States ..." Because the substance of Rule 4.1 and 28 U.S.C. § 566(c) are substantially similar, we discuss the issues presented by both in terms of former.

7. Rule 4.1 was adopted in 1993 in order "to separate those few provisions of the former Rule 4 bearing on matters other than service of a summons" and "contains no new language". Advisory Committee Notes, 1993 Adoption.

8. *See Sibbach v. Wilson & Co., Inc.,* 312 U.S. 1, 13, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941).

requirements in execution proceedings under Rule 69 held that the provisions of the federal rules on service of process were applicable under Rule 69, but those decisions do not resolve the issue presented in this case. Those decisions uniformly applied the federal requirements but did so because the state rules asserted in those cases were general provisions governing service of process, not specific provisions concerning enforcement of judgments:

> We are of the opinion that in supplementary proceedings the Federal Rules of Civil Procedure with respect to the method of service and to the person who may make the service control, rather than general provisions of state practice and procedure, prescribed by state statute, which do not deal specifically with practice and procedure in supplementary proceedings.

*Rumsey v. George E. Failing Co.,* 333 F.2d 960, 962 (10th Cir.1964). *See also Oklahoma Radio Associates v. Federal Deposit Insurance Corp.,* 969 F.2d 940, 942 (10th Cir.1992) (where Oklahoma law required personal service of motion for deficiency judgment but "personal service" was defined by reference to "general Oklahoma procedural law", federal rules held to control service of motion); *Mid–Continent Casualty Co. v. Everett,* 340 F.2d 65, 68–69 (10th Cir.1965); *United States v. St. Paul Mercury Insurance Co.,* 361 F.2d 838, 839 (5th Cir.1966) ("We are of the opinion that [Fed.R.Civ.P.] 4(c) ... governs the service of writs of garnishment issued in a proceeding in a federal court, rather than Rule 1.3(c) [of the Florida Rules of Civil Procedure], which is not a rule peculiarly applicable to service of writs of garnishment.") (applying analogous language of Fed. R.Civ.P. 64), *cert. denied,* 385 U.S. 971, 87 S.Ct. 510, 17 L.Ed.2d 435 (1966); *United States v. Pauly,* 725 F.Supp. 923, 926–27 (W.D.Mich.1989) ("Rule 69(a) does not require application of state statutes which deal *generally* with service of process; rather Rule 69(a) contemplates application of state statutes that deal specifically with enforcement of judgments.... Rule 4(c) and 28 U.S.C. § 566(c) govern service of writs of garnishment in this case because subchapter 2.100 of the Michigan Court Rules relates to service of process in general and does not apply specifically to supplementary proceedings.").

In this case, the California requirement that "personal service" of a notice of levy on a deposit account be made at the office or branch of the financial institution at which the account is actually carried is part of California's law specifically governing only the procedure for the enforcement of money judgments. The fact that the manner of service revolves around the location of property to be levied upon indicates clearly that the requirement only applies in proceedings to enforce a judgment. And while the general rule for personal service in proceedings to enforce money judgments, Cal.Civ.Proc. § 684.110(a), refers back to general California procedural law on service of a summons, the provision governing service on a financial institution in enforcement proceedings is set forth in its entirety in the Enforcement of Judgments Law, *id.* at § 684.110(c), and does not refer back to any other more general provision of the civil procedure code.

■ Thus, California's requirements for service of a notice of levy against a deposit account are not preempted by, but instead supplement, Rule 4.1. Rule 4.1 directs who shall make service—a U.S. marshal, deputy marshal, or special appointee—and where that officer can make such service—anywhere within the state in which the district court sits—but it does not specify the manner in which service shall be made (e.g., personally, by mail, etc.) or upon whom service shall be made. Under Rule 69(a), in post-judgment enforcement proceedings those latter requirements for service are provided by state law, as one prominent commentary on the Federal Rules explains:

> Rule 4(c)(1) [now Rule 4.1] requires that a United States marshal, deputy marshal, or special appointee serve all process other than a subpoena or summons and complaint.... The proper *manner* of service under Rule 4(c)(1) is not immediately clear.... Other federal rules instruct how to serve process in certain situations ... Rule 69(a) states that the procedure for service 'shall be in accordance with the practice and procedure of the state in

which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.' Consequently, the manner of service on in-state defendants in such proceedings must be derived not from Rule 4 but from the applicable federal or state statute.

4A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1090 (1987) (emphasis added) (footnotes omitted). Therefore, Hilao's compliance with Rule 4.1 does not excuse its failure to comply with § 684.110(c) of California's Code of Civil Procedure.

Hilao also contends that the Banks cannot object to service of the notices of levy because the Banks entered general appearances in the court below. A general appearance, of course, subjects the party who appears to the personal jurisdiction of the court. In this case, however, the Banks have never challenged the court's personal jurisdiction over them or the effectiveness of service to invoke that jurisdiction. The Banks are challenging only the effectiveness of service in levying on the funds.

Because Hilao never effectively levied upon any Marcos accounts maintained by the Banks, if the district court had ruled on the motions before it, it should have granted the Banks' motions to vacate and quash the levies and denied Hilao's motion for judgment against the Banks for failure to comply with the levies.

## II. *Authority to Enjoin Deposit of Funds for Interpleader*

■■■ The district court, however, did not rule directly on either the motions to vacate and quash or the motion for judgment. In-

stead, it ordered the Banks to deposit the contested funds into the court's registry in order to begin an interpleader action. No provision of California's law on enforcement of money judgments has been cited as authorizing such an order, and we have found none upon independent review.[9]

Hilao argues, however, that the first sentence of Rule 69(a) itself justifies the district court's order: "Process to enforce a judgment for the payment of money shall be a writ of execution, *unless the court directs otherwise.*" (Emphasis added.) This court has noted that this sentence "seemingly leaves open the possibility of securing payment of a money judgment through the imposition of a contempt sanction". *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1148 (9th Cir.1983). "Nonetheless", we have held, "we do not interpret the exception to execution to permit a federal court to 'enforce a money judgment by contempt *or methods other than a writ of execution,* except in cases where established principles so warrant'". *Id.* (quoting 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 69.03[2] (2d ed. 1982)) (emphasis added).[10] Thus, "[t]he proper means … to secure compliance with a money judgment is to seek a writ of execution". *Id.* at 1147. *See also Gabovitch v. Lundy,* 584 F.2d 559, 560–61 (1st Cir.1978) ("[T]he legislative history and judicial application of Rule 69(a) make clear that the first sentence of the Rule expresses a limitation on the means of enforcement of money judgments and does not create a general power to issue writs of execution in disregard of the state law incorporated by the rest of the Rule.… [T]he purpose of the first sentence of Rule 69(a) is to restrict remedies on money judgments to legal process and to avoid broad invocation of in personam relief, except where established principles warrant equita-

9. The principal remedy against a person other than the judgment debtor who fails or refuses without good cause to deliver property to the levying officer is liability for the lesser of (1) the value of the judgment debtor's interest in the property or (2) the amount required to satisfy the judgment.

10. *Moore's* explains that the final clause of the first sentence of Rule 69(a) originated in the former federal Equity Rule 8. That rule provided that enforcement of money judgments "may" be by writ of execution. The drafters of the Federal Rules of Civil Procedure therefore thought it "advisable to insert a provision in Rule 69 permitting such flexibility under the union of

ble relief.").[11]

Hilao does not argue that any "established principles" justify the district court's order. Instead it argues that this case presents, in the language of *Shuffler*, "exceptional circumstances" and therefore the district court was justified in entering its order. It states that various courts "have found that the Marcoses engaged in a sophisticated pattern and practice of secreting the assets of the defendant Estate in foreign countries"; that the Marcoses have refused to testify or produce documents about those assets; that the Banks, "aided by Swiss courts", have refused to produce any documents; and that the Estate and the Republic of the Philippines have agreed to divide the Estate's assets and that both the Swiss government and the Banks, which were found to be agents and representatives of the Marcoses, "are playing a supporting role in the attempt to consummate the agreement".

We need not determine whether all of this adds up to what *Shuffler* meant by the phrase "exceptional circumstances", since only two of the asserted circumstances directly involve the Banks, against whom the district court's order is directed. First, Hilao states that the Banks have refused to produce documents,[12] but this is clearly inadequate to justify a departure from a writ of execution as the ordinary method to enforce a money judgment. Second, Hilao asserts that the Banks have been found to be "agents and representatives" of the Estate and are assisting in consummating agreements between the Estate and the Republic to divide the assets in the bank accounts. The first part of this assertion correctly states the finding of the district court in its final judgment in *Hilao v. Estate of Ferdinand Marcos (In Re Estate of Ferdinand Marcos, Human Rights Litigation)*, MDL No. 840 (D.Haw. Feb. 3, 1995). Even if this

finding presents an "exceptional circumstance", however, it is outweighed by the fact that the Banks were not parties before the court in the case in which the finding was made. Hilao has cited to no other source to support its assertion that the Banks are assisting in the consummation of agreements between the Estate and the Republic.

The subject matter of this case is unusual. So is the size of the judgment awarded to the plaintiffs. Some of the parties are prominent figures. The difficulty of enforcing that judgment is also no doubt greater than usual, given the location of the assets and the uncooperativeness of the judgment debtor. These facts, however, hardly constitute the kind of "exceptional circumstances" this court had in mind in *Shuffler* that would justify a federal court's use of a procedure other than a writ of execution to enforce a money judgment. *Cf. Spain v. Mountanos*, 690 F.2d 742, 744–45 (9th Cir.1982) ("[U]nder the extraordinary circumstances here where the judgment is against a state, which refuses to appropriate funds through the normal process provided by state law, the district court should not necessarily be reduced to satisfying a judgment through the cumbersome procedure of attempting to execute against state property or bank accounts. It may, instead, pursue any remedy provided in Rule 69 or Rule 70 to enforce the award, including ordering state officials to pay the claim."); *Gary W. v. Louisiana*, 622 F.2d 804, 806 (5th Cir.1980) (" '[W]here a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance.' ") (quoting *Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir.1980)), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981).

law and equity". 7 *Moore's Federal Practice* ¶ 69.03[2].

**11.** At least two cases have upheld the use of contempt in the enforcement of money judgments, but they have done so where state law allowed that procedure. *See Laborers' Pension Fund v. Dirty Work Unlimited, Inc.*, 919 F.2d 491, 494–95 (7th Cir.1990) (applying Illinois law); *Clopper v. Merrill Lynch Relocation Management,*

*Inc. (In Re: Merrill Lynch Relocation Management, Inc.)*, 812 F.2d 1116, 1119–1121 (9th Cir. 1987) (applying Oregon law).

**12.** Hilao does not specify whether this refers to discovery requests made in the underlying proceeding by Hilao against the Estate or in this proceeding to enforce the judgment against the Estate, or both.

In sum, neither California law nor Rule 69(a) gave the district court the authority to order the Banks to deposit the contested funds into the court registry.

## CONCLUSION

Because Hilao never effectively levied on the Marcos accounts, the district court should have granted the Banks' motions to vacate and quash the levies and denied Hilao's motion for judgment against the Banks. Because Rule 69(a) essentially limits a district court's mechanism for enforcement of a money judgment to a writ of execution, the court had no authority to order the Banks to deposit the contested funds into the court registry. Therefore, we vacate the district court's order and decline to address the parties' arguments with respect to the availability of interpleader, the act-of-state doctrine, and international comity.

**VACATED.**