130 F.3d 1342
 97 Cal. Daily Op. Serv. 9042, 97 Daily Journal
D.A.R. 14,617
CREDIT SUISSE; Swiss Bank Corporation, Petitioners,
v.
UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA, Respondent,
Loretta Ann Rosales; Hilda Narciso, Real Parties in Interest.
 No. 97-70193.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 5, 1997.
Decided Dec. 3, 1997.
 
 Michael H. Rauch, Fried, Frank, Harris, Shriver & Jacobson, New York City, for petitioner Credit Suisse; Paul J. Bschorr, Dewey Ballantine, New York City, and Matthew M. Walsh, Dewey Ballantine, Los Angeles, California, for petitioner Swiss Bank.
 Robert A. Swift, Kohn, Swift & Graf, Philadelphia, Pennsylvania, and Jon M. Van Dyke, Honolulu Hawaii, for real parties in interest.
 Stephen E. Becker, Shaw, Pitman, Potts & Trowbridge, Washington, DC, for amicus.
 Petition for Writ of Mandamus to the United States District Court for the Central District of California. D.C. No. CV-96-06419.
 Before: HALL, and T.G. NELSON, Circuit Judges, and WINMILL,* District Judge.
 T.G. NELSON, Circuit Judge:
 
 
 1
 Credit Suisse and Swiss Bank Corporation (the "Banks") petition this court for a writ of mandamus, prohibition or other appropriate extraordinary relief from the district court's denial of the Banks' motion to dismiss the action Rosales et al. v. Credit Suisse and Swiss Bank Corp., No. CV 96-6419 (C.D.Cal.) (Real, J.) ("Rosales action"). We have jurisdiction pursuant to 28 U.S.C. § 1651(a). Because the relief sought in the Rosales action would violate the act of state doctrine, we grant the petition.
 
 I.
 A. The Multi-District Litigation
 
 2
 In Multi-District Litigation ("MDL") Case No. 840 (D.Hawaii), 9,539 victims of human rights violations won a $1,964,005,859.90 judgment against the Estate of Ferdinand E. Marcos ("Estate" or "Marcos Estate"). The judgment included an injunction restraining the Estate and its agents, representatives and aiders and abettors from transferring or otherwise conveying any funds or assets held on behalf of or for the benefit of the Estate pending satisfaction of the judgment.
 
 
 3
 B. Post-Judgment Enforcement Proceeding-The Hilao Action
 
 
 4
 In an attempt to collect on the judgment, the plaintiffs in the MDL case registered their judgment in the Central District of California. See Hilao v. Estate of Marcos, 95 F.3d 848, 850 (9th Cir.1996). Writs of execution and notices of levy were thereafter delivered to the Banks' offices in California.[1] The notices of levy purported to levy against deposit accounts in the name of Ferdinand E. Marcos or twenty-six of his alleged aliases or pseudonyms. Id. None of these deposit accounts were maintained at the California offices of either Bank. Id.
 
 
 5
 After the plaintiffs indicated that they were seeking assets and information from the Banks' offices in Switzerland, both Banks filed motions to vacate and quash the notices of levy. Id. The district court denied the Banks' motions and sua sponte entered an order directing the Banks to deposit into the Registry of the United States District Court for the Central District of California "as an interpleader proceeding all assets in the possession of the BANKS that are the subject matter of this proceeding." Id. at 851. The Banks appealed and we reversed. Id. at 856.
 
 
 6
 We first held that, pursuant to Fed.R.Civ.P. 69(a),[2] the post-judgment enforcement proceeding had to comply with California law. Id. at 853. California law requires "personal service" of a notice of levy on a deposit account to be made at the branch or office of the financial institution at which the account is actually carried. Id. Because none of the Estate's assets were held in deposit accounts located in California, the service of the notice of levy at the Banks' California offices was ineffective. Id. at 853-54. The district court should have therefore granted the Banks' motions to vacate and quash the levies. Id. at 854.
 
 
 7
 Second, we held that because Rule 69(a) "essentially limits a district court's mechanism for enforcement of a money judgment to a writ of execution, the court had no authority to order the Banks to deposit the contested funds into the court registry." Id. at 856. In coming to this conclusion, we noted that although the Banks had previously been found to be "agents and representatives" of the Marcos Estate, the significance of this finding was "outweighed by the fact that the Banks were not parties before the court in the case in which the finding was made." Id. at 855.
 
 C. The Rosales Action
 
 8
 Following our decision in Hilao, counsel for the plaintiffs[3] filed the Rosales action directly against the Banks, seeking the following relief: (1) an injunction restraining the Banks from transferring or otherwise conveying any funds or assets held by the Banks on behalf of the Marcos Estate, except as ordered by the district court; and (2) a declaration that the Chinn assignment[4] is valid and binding on the Banks.
 
 
 9
 The Banks filed a motion to dismiss the Rosales action pursuant to Fed.R.Civ.P. 12(b) on the ground that, among other things, the injunctive and declaratory relief sought in the action would violate the act of state doctrine. The district court denied the Banks' motion to dismiss, and the Banks' subsequent motion for certification for interlocutory appeal.[5] The Banks then filed the present petition, requesting this court to issue a writ of mandamus compelling the district court to vacate its denial of the motion to dismiss, and directing the district court to dismiss the action.
 
 II.
 
 10
 A writ of mandamus "has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Bauman v. United States Dist. Court, 557 F.2d 650, 654 (9th Cir.1977) (quotations omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy." Id. (quotations omitted). Before a writ will issue, this court must be "firmly convinced that the district court has erred and that the petitioner's right to the writ is clear and indisputable." Valenzuela-Gonzalez v. United States Dist. Court, 915 F.2d 1276, 1279 (9th Cir.1990) (citation and quotations omitted).
 
 
 11
 In determining whether a writ should issue, this court looks to five specific guidelines, known as the "Bauman guidelines":
 
 
 12
 (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.
 
 
 13
 Bauman, 557 F.2d at 654-55 (citations omitted). None of these guidelines is determinative and all five guidelines need not be satisfied at once for a writ to issue. Valenzuela-Gonzalez, 915 F.2d at 1279. In fact, rarely will a case arise where all these guidelines point in the same direction or where each guideline is even relevant or applicable. Bauman, 557 F.2d at 655.
 
 
 14
 The Banks argue applicability of only the first three Bauman guidelines. We will limit our review to those three guidelines, since the remaining guidelines do not affect our analysis.
 
 
 15
 A. No Other Adequate Means to Obtain Desired Relief
 
 
 16
 The district court's denial of the Banks' motion to dismiss is not a "final decision" within the meaning of 28 U.S.C. § 1291,[6] and it is therefore not immediately reviewable. See Catlin v. United States, 324 U.S. 229, 236, 65 S.Ct. 631, 635, 89 L.Ed. 911 (1945). Furthermore, because the district court denied the Banks' motion for certification for interlocutory appeal under 28 U.S.C. § 1292(b), permissive interlocutory appeal is not available. The Banks thus have no other means of obtaining immediate review of the denial of their motion to dismiss. See Valenzuela-Gonzalez, 915 F.2d at 1279 (holding that there was no other adequate means to obtain review following district court's denial of § 1292(b) motion); Christensen v. United States Dist. Court, 844 F.2d 694, 696 (9th Cir.1988) (granting mandamus relief where district court refused to certify question for immediate appeal).
 
 
 17
 B. Damage or Prejudice to Petitioner Not Correctable on Appeal
 
 
 18
 The district court issued an order, stayed by this court, compelling the Banks to respond to the plaintiffs' discovery requests. These discovery requests include interrogatories seeking detailed information about accounts purportedly located in Switzerland and requests to produce a wide variety of documents maintained at the Banks' Switzerland offices. It is undisputed that provision of the requested information, and production of the requested documents, would violate Swiss banking secrecy and other laws which carry criminal penalties. The district court's order compelling the Banks to respond to the discovery requests therefore places the Banks in the position of having to choose between being in contempt of court for failing to comply with the district court's order, or violating Swiss banking secrecy and penal laws by complying with the order. Requiring the Banks to choose between being in contempt of court and violating Swiss law clearly constitutes severe prejudice that could not be remedied on direct appeal.
 
 
 19
 C. Order Clearly Erroneous as a Matter of Law-Act of State Doctrine
 
 
 20
 The classic statement of the act of state doctrine is found in Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897), where Justice Fuller stated for the Court:
 
 
 21
 Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.
 
 
 22
 Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 416, 84 S.Ct. 923, 934, 11 L.Ed.2d 804 (1964) (quoting Underhill, 168 U.S. at 252, 18 S.Ct. at 84). Although once viewed as an expression of international law, resting on considerations of international comity and expediency, the act of state doctrine is currently viewed as a "consequence of domestic separation of powers, reflecting 'the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder' the conduct of foreign affairs." W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l, 493 U.S. 400, 404, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990) (quoting Banco Nacional, 376 U.S. at 423, 84 S.Ct. at 937).
 
 
 23
 Under this current view, an action will be barred only if: (1) there is an "official act of a foreign sovereign performed within its own territory"; and (2) "the relief sought or the defense interposed [in the action would require] a court in the United States to declare invalid the [foreign sovereign's] official act." Id. at 405, 110 S.Ct. at 704.
 
 1. Official Act of a Foreign Sovereign
 
 24
 In 1986, when Ferdinand E. Marcos left power, the Swiss Federal Council,[7] the highest governing body in the Swiss Executive Branch, issued an Executive Order freezing all assets of the Marcos family that were held in Switzerland. The Federal Council, expecting the Philippine government to seek recovery of funds deposited by Marcos and his family in Switzerland, issued the freeze order to ensure that the funds did not disappear before the Philippine government had an opportunity to act.
 
 
 25
 Shortly thereafter, the Philippine government formally requested, pursuant to the Swiss Federal Act on Mutual Assistance in Criminal Matters ("IMAC"),[8] that the Government of Switzerland freeze all assets held in Switzerland that belonged to Marcos and his family pending the outcome of a criminal investigation and prosecution in the Philippines.[9] The Philippine government also requested assistance in obtaining evidence about the amount and nature of the Marcos assets held in Switzerland and the circumstances under which such assets were deposited.
 
 
 26
 After ensuring that the Philippine government's request complied with IMAC, the Swiss Federal Office of Police forwarded the request for assistance to the enforcement authorities of the cantons in which the Marcos bank accounts were maintained-Geneva, Fribourg and Zurich-with instructions to take provisional measures immediately.[10] Pursuant to IMAC procedures which require the cantonal authorities to execute the instructions of the Swiss federal government, cantonal orders were immediately issued freezing all assets belonging directly or indirectly to Marcos and/or his family. These cantonal orders, which superseded the previously issued Executive Order, were appealed and affirmed by judgments of the Swiss Federal Supreme Court, the highest court in Switzerland. The cantonal freeze orders remain in effect today.
 
 
 27
 Switzerland's act of issuing first the Executive Order and then the cantonal freeze orders pursuant to IMAC was "paradigmatically sovereign in nature; it is not [the type of act] that a private person can exercise." Callejo v. Bancomer, S.A., 764 F.2d 1101, 1116 (5th Cir.1985). The Executive and subsequent cantonal orders were, therefore, clearly an "official act of a foreign sovereign performed within its own territory." W.S. Kirkpatrick, 493 U.S. at 405, 110 S.Ct. at 704.
 
 
 28
 2. Relief Sought Would Require a United States Court to Declare "Invalid" a Foreign Sovereign's Official Act
 
 
 29
 In the Rosales action, the MDL plaintiffs seek relief including: (1) an injunction restraining the Banks from transferring or otherwise conveying any funds or assets held by the Banks on behalf of the Marcos Estate except as ordered by the district court; and (2) a declaration that the Chinn assignment is valid and binding on the Banks. Both of these forms of relief would not only require a United States court to question the validity of the freeze orders, but would also "render nugatory" Switzerland's attempts to render legal assistance to The Republic of the Philippines by protecting the Estate assets. See Callejo, 764 F.2d at 1116. The relief sought therefore violates the act of state doctrine, and the district court's refusal to dismiss the action was clearly erroneous as a matter of law.
 
 
 30
 The injunction sought by the plaintiffs would compel the Banks to hold any assets of the Marcos Estate subject to the district court's further orders. It is clear that the district court plans on taking control of any Estate assets held by the Banks, even though those assets are currently frozen pursuant to official orders of Swiss authorities. Any order from the district court compelling the Banks to transfer or otherwise convey Estate assets would be in direct contravention of the Swiss freeze orders. Subjecting Estate assets held by the Banks to the district court's further orders would thus allow a United States court to question and, in fact, "declare invalid the official act of a foreign sovereign." W.S. Kirkpatrick, 493 U.S. at 405, 110 S.Ct. at 704. Issuance of the injunctive relief sought would therefore violate the act of state doctrine.
 
 
 31
 A declaration by a United States court that the Chinn assignment is valid and binding on the Banks would also violate the act of state doctrine. The assignment purports to assign to Robert Swift, counsel for the MDL plaintiffs, all of the Estate's "right, title and interest in and to bank accounts maintained in Switzerland." The assignment directs entities having authority over such bank accounts "to perform all necessary acts to effect the transfer of the above bank accounts forthwith."
 
 
 32
 A declaration that this assignment is valid and binding on the Banks would be a declaration that the Banks must transfer all Estate assets held by the Banks to Swift "forthwith." Such a declaration would not only contradict, and therefore declare invalid, the Swiss freeze orders, but would also require the Banks to disregard the Swiss orders.
 
 
 33
 United States courts are "bound to respect the independence of every other sovereign State," including Switzerland. See Underhill, 168 U.S. at 252, 18 S.Ct. at 84. If the MDL plaintiffs want to contest the legality of the Swiss freeze orders, seek a declaration of the validity of the Chinn assignment as against the Banks, or seek an injunction compelling the Banks to turn over the assets, they should do so via the Swiss judicial system. See Miller v. United States, 955 F.Supp. 795, 798 (N.D.Ohio 1996).
 
 III.
 
 34
 The clerk of this court is directed to issue a writ of mandamus directing the district court to vacate its denial of the Banks' motion to dismiss, and to dismiss the action Rosales et al. v. Credit Suisse and Swiss Bank Corp., No. CV 96-6419 (C.D.Cal.) (Real, J.); and further directing the district court to refrain from taking any further action in the Rosales action or any other case involving any or all of the Real Parties in Interest and any assets of the Estate of Ferdinand E. Marcos held or claimed to be held by the Banks.
 
 
 35
 This court retains jurisdiction over this case. Any motions for vacation or modification of this order shall be filed with the clerk of this court.
 
 
 36
 The Petition for Writ of Mandamus is GRANTED.
 
 
 
 *
 Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 The Banks are both incorporated under the laws of, and headquartered in, Switzerland. Swiss Bank maintains a representative office in Los Angeles and a branch office in San Francisco, both of which are licensed as such by the California Banking Department. Credit Suisse maintains a branch office in Los Angeles which is also licensed as such by the California Banking Department
 
 
 [2]
 Rule 69(a) provides:
 Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought....
 Fed.R.Civ.P. 69(a).
 
 
 [3]
 The Real Parties in Interest in the Rosales action are defined as "the class which obtained a judgment against the Estate of Ferdinand E. Marcos in the MDL proceeding." Therefore, the plaintiffs in the MDL proceeding and the Real Parties in Interest in the Rosales action are identical
 
 
 [4]
 The "Chinn assignment" is a document that purportedly assigns all right, title and interest of the Marcos Estate in any bank accounts maintained in Switzerland to Robert A. Swift, "for the benefit of" the MDL plaintiffs. This assignment was signed by Walter Chinn, Clerk of the United States District Court for the District of Hawaii, at the direction of the district court as a contempt sanction against Marcos
 
 
 [5]
 The district court never issued an "order" refusing to dismiss the Rosales action. Instead, the district court orally denied the Banks' motion to dismiss, without specifying the grounds on which such denial was based. To date, no signed order has been entered in this case indicating the disposition of the Banks' motion to dismiss. The district court did issue an order denying the Banks' motion for certification for interlocutory appeal, stating only that certification would "not expedite matters in this litigation" but would instead "delay the processing of this litigation to final judgment."
 
 
 [6]
 Section 1291 provides in relevant part: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States...." 28 U.S.C. § 1291
 
 
 [7]
 The Swiss Federal Council is comprised of the ministers of the Swiss Departments of State, Finance, Defense, Justice and Police, Interior, Public Economy, and Transportation and Energy
 
 
 [8]
 IMAC authorizes the Government of Switzerland to provide assistance in criminal matters to foreign countries that extend reciprocal treatment to Switzerland
 
 
 [9]
 The Philippine government alleged that President Marcos and members of his family had used their governmental powers to divert state funds to their personal benefit. It was alleged, for example, that Marcos and his family had retained portions of funds from international aid and war reparations by Japan, directly withdrawn money from the public treasury, and established and operated state trading monopolies for their personal profit. Decision of Swiss Federal Supreme Court, July 1, 1987
 
 
 [10]
 Switzerland is divided into 26 cantons, each with its own government