The BAXTER STATE BANK, Plaintiff,

v.

Charles H. BERNHARDT, Defendant.

No. 96–2460–JWL.

United States District Court,
D. Kansas.

May 13, 1999.

William P. Coates, Jr., Joseph Y. Holman, Holman, Hansen & Colville, P.C., Prairie Village, KS, Frank B.W. McCollum, E. John Edwards, III, McCollum, Parks & Wilson, L.C., Kansas City, MO, for Baxter State Bank.

G. Michael Fatall, Kansas City, MO, for Charles H. and Shirley V. Bernhardt.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Judgment in this case in the amount of $231,280.99 plus $52.95 per diem interest accruing after November 3, 1997 was entered by the court in favor of plaintiff Baxter State Bank and against defendant Bernhardt on March 5, 1998. Of that sum, $126,317.70 was satisfied by Shirley Bernhardt on April 23, 1998, leaving a remaining balance of $104,-963.29 plus $24.18 per diem interest accruing from November 3, 1997. On January 20, 1999, plaintiff filed its motion to order defendant to satisfy judgment and assessment of punitive damages (doc. 64). On March 4, 1999, this court issued an order directing plaintiff to address the procedural propriety of its motion and the court's authority to enter the relief requested therein on or before March 19, 1999 (doc. 69). The matter is presently before the court on plaintiff's response to the court's show cause order (doc. 76), as well as defendant's response thereto (doc. 79).

## I. Discussion

In its response to the court's show cause order, plaintiff contends that it is indeed attempting to proceed under the "unless the court directs otherwise" clause of the first sentence of Rule 69(a), such that enforcement of its judgment need not necessarily be sought by writ of execution. Throughout its brief, plaintiff claims that "equitable relief is warranted in this case because a writ of execution would be an inadequate remedy," and thus that plaintiff is entitled to proceed under the "unless" clause of 69(a). Plaintiff further claims that "exceptional circumstances" exist in this case warranting the use of extraordinary enforcement measures to secure the execution of its judgment. However, plaintiff does not go beyond these conclusory pronouncements to demonstrate that

the relief otherwise available to it is inadequate, or even more critically, that this court possesses the jurisdiction to afford the relief requested.

## A. Process to Enforce a Judgment: Fed. R.Civ.P. 69(a)

The execution of judgments rendered by federal courts is specifically governed by Fed.R.Civ.P. 69(a). Rule 69(a) of the Federal Rules of Civil Procedure provides, in pertinent part:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Fed.R.Civ.P. 69(a) (West 1998).

■ The court notes that, as a general rule, courts addressing the execution of judgments hold that "the proper means ... to secure compliance with a money judgment is to seek a writ of execution." *Hilao v. Estate of Marcos,* 95 F.3d 848, 854 (9th Cir.1996) (quoting *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1148 (9th Cir.1983)). According to MOORE'S FEDERAL PRACTICE,

> Rule 69(a) provides that the "process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise." This language appears to contemplate a means to enforce money judgments other than by writ of execution. However, such other means are confined only to cases in which established principles warrant equitable relief, such as when execution would be an inadequate remedy. For example, enforcement through the imposition of a contempt sanction would not be authorized absent exceptional circumstances.

13 MOORE'S FEDERAL PRACTICE 3D § 69.02 (1997). *See also Combs v. Ryan's Coal Co.,* 785 F.2d 970, 980 (11th Cir.1986); *Gabovitch v. Lundy,* 584 F.2d 559, 560–61 (1st Cir.1978)

("[T]he legislative history and judicial application of Rule 69(a) make clear that the first sentence of the Rule expresses a limitation on the means of enforcement of money judgments and does not create a general power to issue writs of execution in disregard of the state law incorporated by the rest of the Rule").

■ Although unclear from plaintiff's "motion to order defendant to satisfy judgment," the court assumed that plaintiff intended to move under the "unless the court directs otherwise" clause of Fed.Rule.Civ.P. 69(a), in lieu of seeking a writ of execution, to enforce its judgment against defendant Bernhardt. In light of the general rule governing the execution of judgments, the court therefore ordered plaintiff to identify the precise nature of its motion, and to explain this court's authority to order the relief requested therein.

The court concludes that plaintiff has not sufficiently explained how or why it is entitled to proceed under the "unless" clause of Fed.R.Civ.P. 69(a), rather than by the use of a writ of execution, to enforce its judgment against defendant Bernhardt. Instead, plaintiff has merely reiterated its previous assertions that ordinary collection remedies would afford "inadequate" relief, and thus that disallowing plaintiff to utilize extraordinary methods to execute its judgment would be inequitable. Without more, such a claim is insufficient to warrant the relief requested. Indeed, although the court has no reason to disbelieve that defendant Bernhardt has, according to plaintiff, "$1.7 million in liquid assets at his disposal," and that satisfaction of the judgment "would pose no undue financial hardship to defendant due to defendant's net worth of $2,000,000 and ability to pay," these assertions do not establish this court's authority to issue orders with respect to defendant's out-of-state property.

Likewise, plaintiff has failed to meet its burden to establish that exceptional circumstances exist in this case to warrant enforcement by means other than writ of execution. Apparently, the basis for plaintiff's motion rests entirely upon its displeasure with defendant's admitted transfer of $39,000 to his

son while this lawsuit was pending, and the allegedly fraudulent transfer of an Ohio home in trust in favor of defendant's wife.[1] Indeed, plaintiff argues that these actions warrant "the threat of contempt sanctions," but has cited no legal authority to support its position. The court notes that although the transfer of $39,000 by defendant to his son may be somewhat suspect, plaintiff has failed to establish that the transfer rises to the level of fraud, and even if it could establish such an assertion, plaintiff has not cited any authority to support the conclusion that such individual instances of alleged fraud necessarily constitute the type of "exceptional circumstances" warranting enforcement by means other than by writ of execution.

## B. Authority to Issue Orders Affecting Out-of-State Property

■ More importantly, and in addition to failing to establish that sufficient circumstances exist to justify this court's departure from Fed.R.Civ.P. 69(a)'s directive that, ordinarily, "process to enforce a judgment for the payment of money shall be a writ of execution," plaintiff has failed to establish this court's authority to order the requested relief. As detailed below, the court concludes that plaintiff has failed to demonstrate the

1. With respect to this alleged "fraudulent conveyance" of the Ohio home, the court notes that, despite this court's show cause order, plaintiff wholly failed to address the procedural propriety of challenging that conveyance in the present action rather than in a separate action to set aside the conveyance. Instead, plaintiff merely states that "[i]f it is improper for the Court to declare the transfers fraudulent without a separate action, Baxter requests that constructive trusts be imposed upon the property in favor of Baxter pending the outcome of the relief requested herein."

2. Of the federal laws that do exist in the judgment execution context, most concern only technical details relevant to specific judgments, such as those against revenue officers or members of the armed forces, *see* 28 U.S.C. § 2006 and 42 U.S.C. § 659, respectively, or execution sale formalities, such as the appraisal of goods taken on execution. *See* 28 U.S.C. § 2005. No such preemption issue is implicated in this case.

3. Plaintiff relies on *Beech Acceptance Corp., Inc. v. Connell*, 771 F.Supp. 1154 (D.Kan.1991) to support its contention that this court has jurisdiction to order defendant Bernhardt to turn over property located outside the state of Kansas.

basis for this court's jurisdiction to order defendant to satisfy the judgment from property located outside the state of Kansas.

■ As a preliminary matter, the court notes that, except where the state enforcement mechanism is preempted by an applicable federal law,[2] Fed.R.Civ.P. 69(a) requires compliance with the forum state's execution practice and procedures. Accordingly, the court must look to Kansas law to determine its authority to order the specific relief requested by plaintiff. Thus, under Kansas law governing the enforcement of judgments, it must be proper for this court to issue an order directing defendant Bernhardt to satisfy the judgment from out-of-state property.

■ According to a recent decision from the Kansas Court of Appeals, Kansas courts have no jurisdictional authority to order a non-resident judgment debtor to bring out-of-state property into Kansas to satisfy a judgment.[3] *Elkhart Coop. Equity Exch. v. Hicks*, 16 Kan.App.2d 336, 340, 823 P.2d 223, 226 (1991). In *Elkhart*, the court held that, absent facts indicating that a judgment debtor had removed property *from Kansas* to avoid use of the funds to satisfy plaintiff's judgment,[4] Kansas "has no power to reach

The court notes, however, that the *Connell* decision was issued prior to, and without the benefit of, any Kansas state court decision on the issue, and that Judge Crow emphasized that "[t]he court's research has not yielded any direct precedent" with respect to the issue. *Id.* at 1155. Four months after the *Connell* decision was rendered, the Kansas Court of Appeals specifically addressed the issue of Kansas courts' authority to enter turnover orders affecting out-of-state property in *Elkhart Coop. Equity Exch. v. Hicks*, 16 Kan.App.2d 336, 823 P.2d 223 (1991). Thus, even if the *Connell* decision suggests a different conclusion than that which is reached here, because the court is bound to follow the subsequent decision of the Kansas Court of Appeals in *Elkhart*, the *Connell* decision is inapposite to the resolution of this case.

4. The court notes that defendant Bernhardt testified, under oath, that he transferred $39,000 to his son while this lawsuit was pending. Defendant further testified that the money was returned to him within a matter of months, however. Plaintiff vehemently argues that this allegedly "fraudulent conveyance" of $39,000 establishes that "exceptional circumstances exist to request" relief other than by writ of exe-

property beyond its borders, and ... [the judgment debtor] cannot be required to bring property located out of state before the Kansas court to surrender for the sheriff for satisfaction of the judgment." *Id.*[5] The court noted that plaintiff was not left without a remedy, explaining that

> Kansas has adopted the Uniform Enforcement of Foreign Judgments Act, K.S.A. [§] 60–3001 *et. seq.* The State of Oklahoma has adopted the Uniform Foreign Money Judgments Recognition Act, Okla.Stat. tit. 12, §§ 710 *et seq.* (1981), and it has adopted the Uniform Enforcement of Foreign Judgments Act, Okla.Stat. tit. 12, §§ 720 *et seq.* (1981). The plaintiff can file the Kansas judgment in the state of Oklahoma and utilize the postjudgment collection procedures available in that state.

*Id.* at 341, 823 P.2d at 226.

Commensurate with the holding in *Elkhart,* the court concludes that it has no power to order defendant Bernhardt to bring out-of-state property before this court in satisfaction of the presently unpaid judgment. Such a result comports with the general rule that a court has no jurisdiction to order a judgment debtor to satisfy a judgment from property located outside the state in which the court sits. *See id.* The court notes that, as in *Elkhart,* the denial of plaintiff's request for what amounts to a turnover order of out-of-state property does not leave plaintiff without a remedy. Indeed, both Florida and Ohio, *see* FLA.STAT.ANN. § 55.501 *et seq.* and OHIO REV.CODE ANN. § 2329.021 *et seq.,* respectively, have enacted versions of what is commonly referred to as the Uniform Enforcement of Foreign Judgments Act, and the plaintiff has made no showing why it cannot avail itself of those statutes to effect collection of its judgment against Mr. Bernhardt.[6]

The plaintiff does refer the court to an unpublished Fourth Circuit opinion to support its contention that this court has authority to order the requested relief. *See Clark v. Allen,* 139 F.3d 888 (table), 1998 WL 110160 (4th Cir.1998).[7] In that case, the Fourth Circuit affirmed the United States District Court for the Southern District of West Virginia's order directing defendant judgment debtor to liquidate and surrender the proceeds of certain assets located in Florida, as well as to surrender the deed to a home also located in Florida. Although

---

cution. To the extent that the *Elkhart* court emphasized the fact that no funds had been transferred outside of Kansas in an effort to defraud the judgment creditor in that case, *see Elkhart,* 16 Kan.App.2d at 340–41, 823 P.2d at 226, the court recognizes that it is theoretically possible that defendant Bernhardt's transfer of funds to his son could implicate the "transfer to evade satisfaction of judgment" exception to which the *Elkhart* court cursorily refers. However, the court concludes that the circumstances of this case suggest otherwise. Specifically, the facts indicate that the $39,000 was, in fact, returned to defendant shortly after the transfer was made, and there is no indication that defendant's funds were originally in the state of Kansas and then transferred to another state in order to defraud plaintiff. On the contrary, it is just as likely that the assets were originally held within Mr. Bernhardt's home state of Florida, and then transferred elsewhere—a scenario with which the *Elkhart* court was not concerned. Instead, the *Elkhart* court explained that "[i]n our case, there is no evidence that the defendant removed property *from Kansas* to Oklahoma to avoid having the funds used to satisfy the plaintiff's judgment." *Id.* Accordingly, the court finds no basis to assume that any possible exception to the *Elkhart* holding exists in this case.

5. The court notes that one legal encyclopedia cites the *Elkhart* decision as authority for the proposition that "[j]udgment creditors seeking examination in aid of attachment are generally limited to property within the situs jurisdiction, since a state has no power to reach property beyond its borders." 30 AM.JUR.2D *Executions and Enforcement of Judgments* § 664 (1994).

6. Similarly, the court notes that plaintiff did not address the provisions of 28 U.S.C. § 1963, which specifically allow for the registration of judgments entered by one United States District Court for enforcement in other districts, or why registration thereunder would prejudice plaintiff in any manner. Thus, in addition to state statutes under which plaintiff could proceed to enforce its judgment elsewhere, it is likely that plaintiff's ability to register its judgment in the appropriate federal district court provides an additional enforcement mechanism.

7. As an unpublished Fourth Circuit disposition, the *Clark v. Allen* decision carries limited precedential value. Indeed, according to Fourth Circuit Local Rule 36(c), "[c]itation of this Court's unpublished dispositions ... is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case." *Id.*

somewhat similar to the factual scenario presented here in that the district court's turnover order with respect to out-of-state assets was deemed lawful by the Fourth Circuit, *Clark v. Allen* is legally distinguishable from the present case in one critical aspect: West Virginia law specifically authorizes the issuance of turnover orders, whereas Kansas law does not.

Section 38–5–4 of the West Virginia Code, entitled "Conveyance of real estate outside State and delivery or assignment of personal estate to officer," provides:

> Any real estate outside this State, to which it may appear by such examination that the execution debtor is entitled, shall be forthwith conveyed by him to the officer to whom was delivered such fieri facias or execution; and any money, bank notes, securities, evidences of debt, or other personal estate, which it may appear by such examination are in the possession or under the control of such debtor, though in the hands of some other person, shall be delivered by him, as far as practicable, to the same officer, or by such other person and in such manner as may be ordered by the commissioner; and any chose in action or other intangible property shall be assigned or conveyed to the officer.

W.Va.Code § 38–4–5. Under West Virginia law, then, the *Clark* court explained, the plaintiff was entitled to seek enforcement by means of a turnover order in lieu of a writ of execution because:

> In West Virginia, a money judgment may be enforced by a writ of fieri facias. W.Va. Code § 38–4–5. Once the writ is issued, a judgment-debtor may be summoned to identify property with which to satisfy the judgment. W.Va.Code § 38–5–1. The debtor may then be required to deliver property in his possession, *including real estate located outside West Virginia*, to an officer possessing the writ. W.Va.Code § 38–5–4.

*Clark*, 139 F.3d 888, 1998 WL 110160 at *7 (emphasis added). No similar provision authorizing the issuance of turnover orders, or writs of *fieri facias*, exists under Kansas law, however, and plaintiff's reliance on *Clark* is, therefore, misplaced.

## II. Conclusion

Under the facts and circumstances of this case, the court concludes that plaintiff's motion must be denied. Plaintiff has failed to establish why it would be afforded inadequate relief, or that exceptional circumstances exist, to permit it to enforce its judgment by means other than by a writ of execution. Furthermore, plaintiff has failed to establish that this court has jurisdiction to order the specific relief requested by plaintiff, namely, to require plaintiff to turn over property located outside of Kansas in satisfaction of the judgment.

In sum, plaintiff has failed to establish this court's authority to grant the relief requested in plaintiff's "motion to order defendant to satisfy the judgment." Accordingly, plaintiff's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion to order defendant to satisfy the judgment and assessment of punitive damages (doc. 64) is **DENIED.**