OPINION AND ORDER
[1] This matter comes before this court upon a Notice of Appeal filed by the Defendant, George Emory Onsae (hereinafter “Appellant”). This appeal addresses three issues: whether Appellant’s Notice of Appeal is timely when it was filed before the presumptively timely filing deadline but the appeal fee was not submitted until after the date, whether Appellant knowingly and voluntarily entered into the plea agreement and whether Appellant has a right to treatment for alcoholism.

STATEMENT OF RELEVANT FACTS & PROCEDURAL HISTORY

[2] On May 24, 2007, the Tribe filed six criminal complaints against the Appellant. The charges were: (1) intoxication in violation of Hopi Tribal Ordinance 21, § 3.3.48; (2) injury to public property in violation of Hopi Tribal Ordinance 21, § 3.3.47; (3) disorderly conduct in violation of Hopi Tribal Ordinance 21, § 3.3.21; (4) discharging of firearms in violation of Hopi Tribal Ordinance 21, § 3.3.19; (5) assault and battery in violation of Hopi Tribal Ordinance 21, § 3.3.4 (a domestic violence charge); and (6) assault with a gun in violation of Hopi Tribal Ordinance 21, § 3.3.3 (a domestic violence charge).
[3] All of the charges arose out of the same incident. The following facts are contained in the criminal complaints. Appellant was at Velva Begay’s residence in range unit 552 at 7:20 P.M. on May 23, 2007. Appellant broke into Begay’s truck and dismantled wiring underneath the steering wheel. He argued with Stephanie Roy near the Begay residence, and chased Stephanie and her daughter, Shallah *331 Hanks, with a rifle. Appellant waved the rifle around, fired three shots into the air and pointed the rifle at Roy and her daughter. Appellant threatened to kill them both. Appellant at some point pushed Roy to the ground, hit her on the forehead with his left elbow and shoved his palm against her nose. Roy’s forehead was swollen and she bled from the nose. The complaints accuse Appellant of being intoxicated during the incident. When the prosecution read these facts into the record at trial, Appellant did not dispute them.
[4] On July 18, the parties filed a plea agreement instead of proceeding with trial. Appellant pled guilty to assault, assault and battery, injury to public property and discharging firearms. The trial court dismissed the disorderly conduct and intoxication charges.
[5] The plea agreement states that Appellant will receive 300 days in jail for the assault charge, 90 days in jail for the assault and battery charge, 60 days in jail for the injury to public property charge and 300 days in jail for the discharging firearms charge. He would be given credit for 55 days of jail time served. The plea bargain says that he must serve an additional 310 days, but the remaining 385 days will be suspended in lieu of supervised probation for 3 years. The plea deal also required that Appellant submit to an alcohol/drug assessment and a general behavioral health evaluation within 30 days after release from jail. It also required that he enroll in a Domestic Violence Men’s Re-Education class within 5 days of release from jail, and submit a certificate of class completion to his probation officer within 12 months of release. Finally, it required that he surrender all weapons to the Hopi Police Department and included a restraining order against Appellant, requiring that he stay away from the victim. The trial court adopted all of these provisions.
[6] On August 6, Appellant filed a letter with the Tribal Court asking that the court “modify his sentence.” He stated that he felt that being incarcerated was not an appropriate response to his alcohol problems. The court interpreted this letter as a Motion for Appeal. It sent a letter to Appellant requesting the $5.00 fee for the appeal. Appellant sent the fee on September 19. Appellant sent an additional letter filed October 1 that claimed that he was pressured into entering the plea agreement. This appeal followed.
[7] At oral argument, Appellant added further detail to his claim that he was pressured into the agreement. He stated that he felt pressured to enter into the plea agreement because he had little time to review it. According to Appellant, the prosecution gave him the plea bargain during a short recess on the day of trial.
[8] Appellant also stated at oral argument and in a motion dated November 9, 2007 that he wished to have legal representation on appeal and was unable to find legal representation while in custody. Consequently, this court granted Appellant a continuance to search for legal representation. This court set a deadline of December 7, 2007 for Appellant to file a notice of representation. This court has received no such filing from Appellant.

DISCUSSION

I. Appellant’s Notice of Appeal ivas filed, in a timely manner notwithstanding the late fee.
[9] The Hopi Appellate Court has jurisdiction to hear appeals from final orders. Hopi Tribal Ordinance 21, § 1.2.5. A final order is one that “ends the litigation on the merits and leaves nothing for the [trial] court to do but to execute the judg *332 ment.” Honie v. Hopi Tribal Housing Authority, No. 96AP000007, 1 Am. Tribal Law 346, 1998 WL 35281675 (1998). A written Notice of Appeal must be filed within 20 days from the date of entry of the final order. Hopi Indian Rules of Civil and Criminal Procedure, Rule 37(c).
[10] The final judgment in this case is the trial court’s Judgment Order filed on July 18, 2007. A timely notice of appeal must be filed within 20 days of the final order. That date was August 7, 2007. Appellant filed his Motion for Appeal on August 6. He did not submit the appellate fee until September 19.
 [11] We find that the Notice of Appeal was timely filed notwithstanding Appellant’s failure to pay the fee before the deadline. Rule 37(c) does not explicitly state that the fee is required at the time of filing. This court has also never ruled on this issue. In the absence of Hopi statutes and case law addressing an issue we look to foreign case law as persuasive authority. Tribe v. Mahkewa, AP-002-92, AP-003-93 (1995); Hopi Tribal Resolution H-12-76.
[12] Foreign courts accept timely filed Notices of Appeal from criminal defendants, even without a timely fee. For example, the Ninth Circuit heard a criminal appeal with a timely Notice of Appeal but late fee in Pratti v. U.S., 350 F.2d 290 (9th Cir.1965). The court held that for the purpose of determining timely filing in criminal matters, the date that the notice of appeal is filed is controlling whether or not the filing fee is included at the time of filing. Id. at 291 (citing Halfen v. United States, 324 F.2d 52, 54 (10th Cir.1963); United States v. Brilliant, 274 F.2d 618, 619 (2nd Cir.1960)).
[13] Although Arizona courts have no analogous case on this precise issue, the Arizona Constitution assures the right of criminal defendants to appeal and states that no fee shall be used to deny that right. Arizona Constitution Art. 2 § 24. It is likely that courts would interpret this provision to mean that criminal appellants should not be denied their appeal because of failing to send the fee along with a timely Notice of Appeal.
[14] Furthermore, predicating the right to appeal on a fee has raised issues in foreign courts in another context: the defendant’s inability to pay a fee. Federal courts recognize that there is no constitutional right to an appeal. However, once appeal of criminal convictions is made generally available in a particular jurisdiction, denying appellate review based on a defendant’s inability to pay fees is a violation of constitutional rights to due process and equal protection under the law. Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (“There is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance.... ”). Arizona courts have explicitly adopted the Griffin framework. Arizona, v. Stolze, 112 Ariz. 124, 539 P.2d 881 (1975).
[15] Similar fundamental fairness concerns are present here. When the Tribe makes generally available a system of criminal appeals, we are unwilling to frustrate an appeal merely because of a late fee. We therefore hold today that a late fee does not interfere with a criminal defendant’s right to appeal, when the defendant has submitted a timely Notice of Appeal.
[16] However, we do not intend this holding to be read to undermine all filing-deadlines. Judicial economy and the need for finality in rulings require that lines be *333 drawn. The time limit statute is intended to give a sense of finality to litigants. See Poleahla v. Hopi Tribe, AP-007-88 (1987). This holding should only be read to affect timely filed Notices of Appeal that are accompanied by late (but reasonably filed) fees.
II. The trial court ensured that Appellant entered the plea agreement knowingly and voluntarily.
(17] On appeal, Appellant claims that he was pressured into entering the plea agreement with the Tribe. However, if he felt that any part of the bargaining process was conducted improperly, he should have alerted the trial judge of his concerns when given the opportunity.
[18] It is clear from the audio records supplied by the trial court that the trial court ensured that Appellant knowingly and voluntarily entered into the plea agreement. The trial judge asked Appellant a number of questions before approving the plea bargain. The trial judge asked Appellant whether he understood the plea agreement. Appellant responded that he did. He asked whether Appellant had eaten or consumed anything prior to coming to the court hearing that may cause him not to understand the proceedings. Appellant responded that he had not. He asked Appellant whether anyone had threatened him or coerced him into pleading guilty. Appellant responded that no one had forced his plea. The trial court judge also specifically asked Appellant to plead guilty to each of the charges. Appellant plead guilty to the four remaining charges. Finally, the trial judge informed Appellant that the plea agreement was just a recommendation to the court, and that the court had discretion to sentence Appellant for incarceration up to one year and fines up to $5,000 for each count. Appellant responded that he understood. At no point did Appellant take issue with the proceedings or voice any concern.[1]
*334 [19] This court has set specific guidelines for the acceptance of a standard guilty plea. Ami v. the Hopi Tribe, AP-003-89, AP-004-89, AP-003-88 (1996). Under the guidelines set forth in Ami, the court must make an “active inquiry” to ensure that a guilty plea is made knowingly and voluntarily. The trial judge must (1) read the complaint to the defendant; (2) give the complaint to the defendant; (3) explain the charge to the defendant; (4) advise the defendant of his rights; (5) create a complete record of the proceedings; (6) determine that there is a factual basis for the plea; (7) determine that the plea was voluntarily made; and (8) ask the defendant to plea to the charges. Id.
[20] This court has never explicitly held that the requirements of Ami apply to guilty pleas that are the result of plea agreements between the Tribe and a criminal defendant. However, even if we were to find that the requirements of Ami apply to the present case, the “active inquiry” of the trial court ensured that Appellant entered the plea agreement knowingly and voluntarily.
[21] The trial court fulfilled all of the Ami requirements. The judge fulfilled requirement number one when he asked Appellant whether he would like the complaint read. Appellant replied that he would not. Appellant received a copy of the complaint at the arraignment, fulfilling requirement number two. Although the judge did not specifically describe the charges to Appellant, he did ask if Appellant understood the charges. Appellant responded that he did. This statement fulfills requirement number three. The trial court created a complete audio record of the proceedings, fulfilling requirement number five. The judge also asked the prosecution to make a statement of the facts of the case. After the prosecution read the majority of the facts from the various criminal complaints, the court asked Appellant whether he disagreed with anything in the prosecution’s statement. Appellant replied that he did not.[2] *335 This exchange fulfills requirement number six, ensuring a factual basis for the plea. The judge asked Appellant if he had been threatened or otherwise influenced to make the guilty plea. Appellant replied that he had not. This questioning fulfills requirement seven, ensuring that the plea is voluntarily made.
[22] Finally, the court also advised Appellant of his legal rights, fulfilling requirement four. The trial court ensured that Appellant understood the plea agreement, which explicitly states that by pleading guilty, the Appellant gives up his right to a trial by jury, to confront, cross-examine, and compel the attendance of witnesses, and the privilege against self-incrimination. The court also specifically found that Appellant understood his rights. Moreover, even if Appellant was improperly denied the opportunity to seek legal counsel, this court gave him ample opportunity to seek such counsel on appeal.
[23] The trial court’s “active inquiry” sufficiently ensured that Appellant’s guilty plea was knowingly and voluntarily made.
III. This court declines to consider whether Appellant has a right to treatment for alcoholism.
[24] On appeal, it appears that Appellant claims a right to treatment for alcoholism. See Motion of Appeal filed August 6, 2007. It is unclear whether such a right may be read into the Hopi Constitution or the Indian Civil Rights Act, 25 U.S.C. 1302. Without the benefit of additional briefing on the issue, we decline to rule on this issue at this time.

CONCLUSIONS

[25] We find that Appellant’s Notice of Appeal is timely filed, notwithstanding the late submission of the appellate fee. We also find that the trial court ensured that Appellant’s guilty plea was knowingly and voluntarily made. At no time during the proceedings in the trial court did Appellant complain that he was pressured into the plea agreement. Finally, we decline to decide whether Appellant can claim a right to alcoholism treatment.

ORDER OF THE COURT

It is hereby ORDERED that the Judgment Order of the trial court is AFFIRMED.

. The exact exchange on the audio record of the trial court is as follows:
Court: Did you enter into an agreement to dispose of this matter with our tribe? Appellant: Yes.
Court: Have you eaten anything or consumed anything prior to coming to the court hearing today that may cause you not to understand this proceeding?
Appellant: No.
Court: And that may cause you not to understand the plea agreement?
Appellant: No.
Court: Are you under any kind of medication at the present time?
Appellant: No.
Court: Do you understand the plea agreement?
Appellant: Yes, I do.
Court: And how do you want to plea to the charges today, assault? Count one, how do you plead to that charge?
Appellant: Guilty ...
Court: Alright, thank you. And how do you plead to assault and battery, sir?
Appellant: Guilty.
Court: Injury to public property?
Appellant: Guilty.
Court: Discharging firearms?
Appellant: Guilty.
Court: Do you want the complaint read or not?
Appellant: No.
Court: Do you understand the charges?
Appellant: Yes, I do.
Court: Alright. Anyone force you to plead guilty to the charges?
Appellant: No.
Court: Any threats or promises made to you by anyone in the event you plead guilty?
Appellant: No.
Court: And you do so on your own?
Appellant: Yes.
Court: You know that the plea agreement is merely a recommendation to this court, it’s not binding on the court? If the court does not accept any parts of the agreement, including the sentence recommendation, the plea agreement will be rejected and you will have to go to trial.
Appellant: Yes, 1 understand.
Court: You understand that? In addition, you understand that the court has the authori *334 ty to impose a fine of up to $5,000 or order you to serve 365 days in jail or both for each of the four offenses. You understand that?
Appellant: Yes, 1 understand.

. The exact exchange on the audio record of the trial court is as follows:
Court: Do we have any facts?
Prosecutor: Your honor, what we have is from the police reports and also from the statement that the victim had provided. May 23, 2007 is when these offenses were committed. The time was in the evening, around 7:20 P.M. Location was in range unit 552. In that range unit there’s the Velva Begay home, that’s where the incident happened. The defendant and the victim, Stephanie Roy, had been there that day, at that home. Both had been consuming alcohol. There was some disagreement that had occurred. The defendant had gotten hold of a weapon, a .22 caliber rifle. The weapon apparently belonged to the victim’s mother's husband, who is not related to the victim, that’s like her stepfather. He had gotten hold of that weapon, he had shot, fired off the weapon. He had shot not directly at the victim but around and in her presence. He had also struck her in the temple area with her fists. She had taken off from him. The police were called. When the police came, the defendant was not there, he had taken off from the area. The police were able to track him to a location where he was lying on the ground, hiding. They also confiscated the weapon, which was not too far away from where he was at. The officer states that he was able to see that the weapon had been discharged. The weapon still had some light rounds in it. They not only confiscated that, but a pocket knife from him. They also saw that when they got him off of the ground, that he was unsteady on his feet, he had a strong odor of alcohol coming from his person. They got information from the victim about what had occurred, which is basically what I reported to the court. The defendant was then arrested. It was then also found through statements from the victim and also another person that the defendant had caused damage to a vehicle that had *335 been parked there. The damage included pulling some wires from the vehicle along with other damage that is described in the complaint. That’s basically the facts that we would have presented today at the trial, your honor.
Court: Thank you. Mr. Onsae, do you understand the facts?
Appellant: Yes, I understand.
Court: Is there anything that you heard concerning the incident that you disagree with?
Appellant: No.